676 A.2d 270

**Paul S. KARPIAK and Connie A. Karpiak, his wife; Francis Bodnar and Judith Bodnar, his wife; Andrew J. Tomko and Lucille A. Tomko, his wife; James A. Werley, Jr., and Barbara A. Werley, his wife, Appellants,**

**v.**

**J.S. RUSSO and Patricia Russo, t/d/b/a Plum Boro Supply Company; J.S. Russo, t/d/b/a J.S. Russo Construction Company; The Dixie Corporation; and J.S. Russo and Patricia Russo, individually.**

Superior Court of Pennsylvania.

Argued Feb. 8, 1996.

Filed May 10, 1996.

472

Roy E. Leonard, Pittsburgh, for appellants.

Frank W. Jones, Pittsburgh, for appellee.

Before JOHNSON, FORD, ELLIOTT and HESTER, JJ.

HESTER, Judge.

Appellants, Paul and Connie Karpiak, Francis and Judith Bodnar, Andrew and Lucille Tomko, and James and Barbara Werley, appeal the September 12, 1995 order wherein the trial court refused to lift a compulsory nonsuit entered at trial. This action involves allegations of nuisance, trespass, violation of the zoning laws and was instituted against appellees, J.S. and Patricia Russo, Plum Boro Supply Company J.S. Russo Construction Company, and The Dixie Corporation, as the result of their operation of a landscaping supply business on Saltsburg Road in Plum Borough. We affirm.

This action was instituted by home-owners who live near appellees' landscaping supply business. Appellants claimed that the business was a public and private nuisance, constituted a trespass against their property, and violated the local zoning laws. They also requested punitive damages. Since 1984, appellees have been in the business of selling topsoil, shredded bark, compost, sand, and river rock at the intersection of Saltsburg Road and Willow Village Drive, where appellants reside or resided. Saltsburg Road is traveled heavily

with trucks, buses, and many cars. Reproduced Record ("R.R.") at 69a, 397a–98a.

Appellants requested a preliminary injunction which was granted in part. The case proceeded to trial as to appellants' request for a permanent injunction and damages. Before trial, the court ruled that the case would proceed only as to the counts of private and public nuisance and that proof regarding damages would be limited to appellants' out-of-pocket expenses.

After appellants' evidence regarding nuisance was presented, the trial court granted appellees' motion for a compulsory nonsuit and dismissed the jury. This appeal followed denial of post-trial motions.

The following transpired at the hearing on the preliminary injunction. William A. Berchick, Jr., a zoning officer for Plum Borough, testified that appellees' business is located in an area zoned as "regional commercial." R.R. at 23a. Other businesses along Saltsburg Road include banks, funeral homes, a flower shop, an electronics store, a beauty shop, an insurance agent's office, and a doctor's office. There also is another landscaping supply business on Saltsburg Road.

The zoning ordinance was changed in Plum Borough in 1993; appellees established their landscaping supply business in 1984. Prior to 1993, under the applicable zoning ordinance enacted in 1947, appellees' property was zoned as "business." *Id.* at 31. With the 1993 changes, the zoning of Willow Village Drive was changed to residential; however, as noted, appellees' land remained zoned as regional commercial.

Mr. Berchick testified that appellees' business was in conformity with the 1947 ordinance. Mr. Berchick also opined that since the landscaping business had been in operation when the 1993 ordinance was passed, the business did not violate the 1993 ordinance. This testimony was inconsistent with a deposition given by Mr. Berchick wherein he stated that he was not able to state an opinion as to whether the landscaping business violated the 1947 zoning ordinance.

Appellants' expert zoning witness, Victor Delle Donne, testified that the landscaping business violated the 1993 ordinance. He also examined the 1947 ordinance, explaining that the 1947 ordinance classified appellees' business as a "B" classification. B classification had a list of permitted uses and a list of prohibited uses. Appellees' use was not listed as a permitted use, but it also was not listed as a prohibited use. The use simply is not covered in the 1947 ordinance. He did opine, however, that since the use is not listed as a permitted use in the 1947 ordinance, it was an illegal use under that ordinance.

It was established at the hearing on the preliminary injunction that no action had been taken by Plum Borough against appellees for their use of the land as a landscaping business in the eight years that lapsed between the inception of their business and the lawsuit at issue herein.

After Mr. Tomko described appellees' activities on the property and the effect of those activities, the trial court issued an order denying a preliminary injunction but placing some restrictions on the hours that appellees were permitted to operate and ordering them to install concrete pads under manure piles. The case proceeded to a jury trial.

Prior to the start of trial, the trial court made certain rulings, which will be discussed in more detail as we decide the issues presented on appeal, and the case proceeded before the jury solely on the issues of whether appellees' activities constituted a public or private nuisance and whether punitive damages could be imposed. After the close of evidence, the trial court issued an order granting appellees' motion to dismiss the punitive damages claim and motion for compulsory nonsuit as to the private and public nuisance claims.

Appellants first contend that their evidence was sufficient to go to the jury on the tort of public nuisance. In *Waschak v. Moffat,* 379 Pa. 441, 109 A.2d 310 (1954), our Supreme Court adopted Restatement of Torts § 822 as the law of Pennsylvania. In *Kembel v. Schlegel,* 329 Pa.Super. 159, 478 A.2d 11 (1984), we ruled that the successor section in the Restatement

(Second) of Torts § 822 contained the authoritative definition of the tort of private nuisance. Section 822 provides:

### § 822. General Rule

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

The Restatement indicates that a defendant is not subject to liability for an invasion unless the invasion caused significant harm, which is defined as:

### § 821F. Significant Harm

There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose.

Comment C to section 821F further explains the meaning of significant harm:

c. *Significant harm.* By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interests before he can have an action for either a public or private nuisance.... [I]n the case of a private nuisance, there must be a real and appreciable interference with the plaintiff's use or enjoyment of his land before he can have a cause of action.

... :.

When [the invasion] involves only personal discomfort or annoyance, it is sometimes difficult to determine whether the invasion is significant. The standard for the determination of significant character is the standard of normal persons or property in the particular locality. If normal persons living in the community would regard the invasion

in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant.

Herein, the trial court concluded that while appellees' actions may have been annoying and a cause of inconvenience, as a matter of law, appellants failed to establish that the invasion was seriously annoying or intolerable. We agree.

Appellants' testimony was fairly consistent and may be summarized as follows. Appellees' business is located on a portion of Saltsburg Road which includes other businesses, a bank, a funeral home, a flower shop, an electronics store, and an insurance office. Appellees sell topsoil, river rock, mushroom manure, limestone, gravels, shredded bark, mulch, and sand from their property. Their hours of operation are from approximately 8:00 a.m. until 4:00 p.m. or 5:00 p.m. Monday through Saturday. Occasionally, they operate on Sunday. The business is seasonal, is closed in the winter, and is not as heavy in summer as in spring and fall. The various products are loaded onto trucks with backhoes and payloaders. Thus, noisy machinery operates weekdays and Saturdays. In addition, foul odors emanate from the manure and decaying mulch. Finally, dust from bark, limestone and topsoil continuously blows onto appellants' property.

Appellant Tomko, admitted that there are several other commercial establishments at or near the intersection of Saltsburg Road and Willow Village Drive, including a funeral home, a bank, a flower shop, and an electronics store. There also is an American Legion Club and a swimming pool in the area. Mr. Tomko works weekdays from 7:30 a.m. until 4:00 p.m., Monday through Friday, and the only damages he has incurred from appellees' business are expenses for cleaning his car, his house, and outside furniture. When Mr. Tomko returns from work, the business is closed. Further, the business is closed for months each year. His chief complaint is the loud banging of truck tailgates, but he acknowledged that the banging occurs perhaps three or four times a day. Mr. Tomko also stated that borough officials have not taken any action with respect to the business even though he and

other appellants attended five or six council meetings between 1984 and 1993.

Charles and Laurel Balentine testified that they moved into a home at 106 Willow Village Drive in January, 1993, and moved out in March, 1994. They complained of smell, noise, and dust, but acknowledged that at times, there is no activity whatsoever on appellees' property. Rosabelle Skinner lives nine houses from appellees' business. She can hear appellees' equipment but also admitted that there is heavy traffic on Saltsburg Road, including trucks and buses that can be heard at her home.

James A. Werley, Jr. testified that he lived at 106 Willow Village Drive, across the street from appellees' business, until January, 1993. He also complained about dust and noise. However, he was a car salesman and worked during the typical work hours that appellees are open for business.

Paul S. Karpiak testified that he works on most weekdays. There are two days a week, usually Thursday or Friday, when he does not go to work until noon. He has spoken informally with borough officials, including councilmen, the borough manager and the borough solicitor, regarding the problem. However, no official of the Borough of Plum has ever taken any action in response to appellants' requests. He also testified that appellees' business was not open on Sundays and that he rarely hears noise after 4:00 p.m. the remaining days. He agreed that the traffic on Saltsburg Road was very heavy and that there were other businesses in the area.

Judith Ann Bodnar indicated that Saltsburg Road was travelled heavily and that typically, she is not home during the working day. Mrs. Bodnar saw *one* rat come from appellees' property.

It also is significant that none of appellants testified as to any *damages* they have incurred as a result of the conduct of the appellees' business. Other than Mr. Tomko, who testified that he had to clean his car, house, windows, and outside furniture, there was no evidence that appellees' business caused any damage to appellants' properties.

In light of this evidence, the trial court's decision clearly was correct. Dust and noise are the two intrusions complained about by appellants. The noise, meanwhile, is during daylight hours and occurs, for the most part, when all but one appellant is at work. *Compare Anderson v. Guerrein Sky–Way Amusement Co.*, 346 Pa. 80, 29 A.2d 682 (1943)(fifty-four plaintiffs brought action against drive-in theatre which operated with bright lights and loud noise inconsistent with the residential character of the neighborhood and prevented plaintiffs from sleeping). Furthermore, this noise *is not out of character with the area* since appellants admitted that Saltsburg Road is traveled heavily with trucks, buses, and cars, which make the same noises as appellees' machinery which consists of backhoes, loaders, and trucks. *Compare Bedminster Township v. Vargo Dragway, Inc.*, 434 Pa. 100, 253 A.2d 659 (1969) (noise from drag cars could be heard three miles away in this residential and farming community, and people who lived one mile away could not hear themselves talk and had their windows rattle from the noise).

In *Molony v. Pounds*, 361 Pa. 498, 64 A.2d 802 (1949), our Supreme Court reversed the issuance of an injunction against a restaurant. The injunction was issued from the hours of 1:00 a.m. to 6:00 a.m. because the restaurant emanated noise and foul odors. The Court noted that no one is entitled to absolute quiet in the enjoyment of their property and that all that is required is that the degree of quietness be consistent with the standard of comfort in the relevant locality. The Court opined that people who reside in a neighborhood with businesses close by must compromise their comfort to the commercial necessities of the business.

Herein, appellees' property unquestionably was zoned business when they started selling landscaping supplies. While other businesses in the area are largely office buildings, the evidence establishes that Saltsburg Road is traveled heavily and is noisy during the same hours when appellees operate their business. Saltsburg Road is busy with vehicular traffic and appellees' noise is from vehicles.

■ Now we address whether the dust is sufficient to constitute a nuisance. We note that this dust all emanates from benign natural substances. These substances are top-soil, rock, sand, and vegetable manure. Further, the dust is neither poisonous nor harmful. We also note no one testified that the dust causes physical ailments such as dizziness, headaches, and vomiting.

Therefore, appellants' attempt to equate this case with that of *Evans v. Moffat,* 192 Pa.Super. 204, 160 A.2d 465 (1960), is unconvincing. In *Evans,* plaintiffs suffered physical symptoms of headaches, nausea, and dizziness from defendant's release of noxious, poisonous, and foul-smelling gases emanating from a mine refuse dump.

■ The production of a sufficient amount of dust from a business can constitute a nuisance as long as the dust causes *significant* harm to the aggrieved party. *Harford Penn–Cann Service, Inc. v. Zymblosky,* 378 Pa.Super. 578, 549 A.2d 208 (1988). Herein, the dust created does not rise to that level. There was no evidence that the dust caused appellants health problems or that it affected their ability to carry on their daily activities. This can be contrasted to the situation present in *Harford,* where the business generated such a vast amount of dust that the trial court issued an injunction based on a finding that the plaintiffs experienced health problems and lost business due it.

■ Since appellants failed to establish the existence of a private nuisance, it necessarily follows that they are not entitled to damages for public nuisance as requested at pages twenty-two through twenty-five of their brief. It also follows that they have failed to establish the existence of a public nuisance since appellants admit that a public nuisance does not exist unless a nuisance exists *and* affects the community at large and not merely the complaining parties. *See* Appellants' brief at 17.

■ Appellants next claim that the trial court erred in granting a nonsuit as to their claim for punitive damages. In accordance with *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800 (1989), we look to Restatement (Second) of

Torts section 908(2) for our standard in determining whether punitive damages may be awarded:

(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

Restatement (Second) of Torts § 908(2). Appellees' conduct in engaging in a legitimate business can hardly be viewed as evil, outrageous, or indifferent. This claim therefore fails.

■ Appellants also charge the trial court with error in dismissing their trespass claim, arguing that the evidence established a cause of action for trespass pursuant to Restatement (Second) of Torts § 165:

§ 165. **Liability for Intrusions Resulting From Reckless or Negligent Conduct and Abnormally Dangerous Activities**

One who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor, or to a thing or a third person in whose security the possessor has a legally protected interest.

Appellants state that the airborne dust constituted an "entry" onto their land. However, we need not address this claim, which is whether dust is sufficient enough of a particle to constitute a trespass, since the evidence failed to establish that the dust caused appellants harm. There was no evidence that appellants suffered ailments from the dust nor was there evidence that the dust caused any corrosive damage to their property. Hence, the trial court correctly dismissed this cause of action prior to trial.

■ Next, appellants claim they were entitled to maintain a private action for violation of the zoning ordinance pursuant to

482

53 P.S. § 10617, which states that a private action for a zoning violation may be maintained *if* the municipality has been given thirty days notice that the action will be maintained *before* the action is instituted. The trial court observed that appellants failed to give the thirty-day prior notice to the municipality of this action and that its dismissal of the count regarding zoning violations rested on this ground. Appellants fail to refute this finding of fact, see appellants' brief at 29–32; thus we affirm. *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984) (the appellant has the burden to demonstrate the trial court's decree is erroneous due to the evidence or the law).[1]

Appellants' final contention is that the trial court improperly considered evidence from the preliminary hearing in granting the nonsuit. A reading of the trial court opinion in this matter clearly demonstrates the inaccuracy of this assertion as that opinion establishes that the court relied upon nothing other than the evidence at trial in supporting its decision to dismiss this action.

Order affirmed.

1. In this portion of their brief, appellants refer us to case law which does *not* address the issue of whether *ex post facto* notice of a judicial proceeding fulfills a statutory requirement that *a priori* notice be given.