J-S53032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KIM OLIVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DAVID GASDIK AND  BARBARA ANN | : | No. 1390 EDA 2019 |
| GASDIK | : | |

Appeal from the Order Entered May 1, 2019
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2018-C-0538

BEFORE:  OLSON, J., STABILE, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED APRIL 17, 2020**

Appellant Kim Oliver appeals from the order sustaining a preliminary objection filed by Appellees David Gasdik and Barbara Ann Gasdik, dismissing her fourth amended complaint, and granting Appellees' motion for sanctions. Appellant claims that the trial court erred in dismissing her fourth complaint for legal insufficiency and ordering her to pay $2,500 for Appellees' attorney's fees.  For the reasons that follow, we reverse the dismissal of the complaint and remand this matter for further proceedings, but affirm the sanctions.

The trial court summarized the background of this appeal as follows:

> This case involves two adjoining rowhomes with a common chimney between the properties.  The chimney does not service a fireplace but is connected to a gas boiler.  [Appellant] had her home weatherized by Custom Weatherization. Custom Weatherization determined the chimney had a hole in it which was leaking carbon monoxide; the leak was on [Appellees'] property. [Appellant] was warned by Community Action, the organization

that arranged for the weatherization, that she was at risk for low[-]level carbon monoxide and there was a substantial risk of high-level carbon monoxide poisoning if the boiler on [Appellees'] rental property failed, [Appellees] forbade their tenants from applying for inclusion in the weatherization program.

The procedural history of this case began with [Appellant] filing a praecipe for writ of summons on March 6, 2018. A complaint after summons was filed May 29, 2018, followed by an answer with new matter. On June 20, 2018, [Appellant] filed a [first] amended complaint, [p]reliminary objections and motion to fix amount in controversy were filed on July 10, 2018 followed by a response to preliminary objections.

On July 23, 2018, the Honorable Douglas O. Reichley recused himself from this case and the case was reassigned to the undersigned.

On September 11, 2018, a status conference and argument on the preliminary objections were held, Attorney Robert Pandaleon[1] appeared on behalf of [Appellant] and [Appellees] represented by Attorney Andrew Bench. During the status conference, the case was scheduled for routine deadlines and important dates including a pretrial and jury trial date.[2] It was not brought to the [trial] court's attention that [Appellant] had consented to have the case arbitrated pursuant to the documents filed in response to the preliminary objections.

By order dated September 19, 2018, th[e trial] court ruled on [Appellees'] preliminary objections sustaining the lack of specificity objection and permitting twenty days to file a second amended complaint that more specifically sets forth the cause of action. [Appellant] was also directed to file a praecipe to strike the case for arbitration consistent with representations made in

_____

[1] Attorney Richard J. Orloski filed the complaints relevant to this appeal and represents Appellant in this appeal. Attorney Pandaleon appeared as substitute counsel when Attorney Orloski was not available.

[2] On September 12, 2018, the trial court issued a case management order based on Appellant's first amended complaint and Appellees' answer and new matter. The September 12, 2018 order directed that the parties complete factual discovery by December 15, 2018. While Appellant subsequently filed her second amended complaint, the parties engaged in some discovery, which Appellees referred to in their preliminary objections.

-S53032-19

her brief, which stated: "[a]t this point, [Appellant] is willing to agree to an arbitration where damages are under $50,000" and "[at] this point, this is a case for arbitration."

[Appellant] filed a second amended complaint on October 3, 2018. [Appellees] filed preliminary objections to this new pleading and [Appellant] responded in opposition.

The preliminary objections to the second amended complaint were scheduled for argument but prior to that date, on October 31, 2018, [Appellant] filed a motion to amend complaint and a third amended complaint. [Appellees] filed preliminary objections and [Appellant] filed a response in opposition. Argument was heard on preliminary objections on December 4, 2018. Present for [Appellant] was Attorney Pand[a]leon; Attorney Bench represented [Appellees]. By order dated December 11, 2018, th[e trial] court sustained the preliminary objections to the third amended complaint and provided twenty days for [Appellant] to file a fourth amended complaint.[3] The order stated "[t]he fourth amended complaint must clearly set forth the cause(s) of action asserted, provide factual assertions to support the causes of action with specificity, assert only the damages claimed, and must be properly verified."

On December 31, 2018, [Appellant] filed a fourth amended complaint (demanding a jury trial and asserting that damages are in an amount in excess of the jurisdictional limits for arbitration). [Appellees] filed preliminary objections to the fourth amended complaint on January 11, 2019; [Appellant] filed a response in opposition on January 31, 2019. Additionally, [Appellees] filed a motion to compel and a motion for protective order on February 7, 2019; a motion for sanctions on February 9, 2019; a motion for discovery sanctions on February 11, 2019; and a motion to determine sufficiency on February 23, 2019. [Appellant] responded to all of the motions.

---

[3] Appellant's third amended complaint set forth two counts, one for negligence and one for an intentional tort of "reckless endangerment." The trial court, when sustaining Appellees' preliminary objections to Appellant's third amended complaint, expressed confusion over whether a cause of action for reckless endangerment existed in tort law. N.T., 12/4/18, at 10-11. Appellant's fourth amended complaint contained a claim of reckless endangerment similar to the one in her third amended complaint.

- 3 -

Argument was scheduled for the preliminary objections and all of the outstanding motions for April 23, 2019 by scheduling orders dated February 28, 2019 and March 5, 2019. On April 22, 2019, th[e trial] court received a continuance application for the April 23, 2019 arguments. Lehigh County Rules of Civil Procedure provide: "[p]rior to submitting any such motion [for continuance], the movant or his/her counsel shall confer with all counsel of record and any unrepresented parties to determine their position with respect to the continuance request, and shall indicate their position in the motion." Leh.R.C.P. 208.3(a)(4). [Appellant] failed to obtain and/or indicate opposing counsel's position to the continuance in her application for continuance.

Attached to the application for continuance was a letter to the [trial] court stating that [Appellant's] counsel[, Attorney Orloski,] will be attached for a federal trial beginning on April 22, 2019, and will, therefore, be unavailable for argument on April 23, 2019. Counsel did not provide a copy of the federal attachment to th[e trial] court. The correspondence further provides:

> Regretfully, I must request a continuance of the argument scheduled for Tuesday, April 23, 2019. I am prepared to attempt an alternative which is acceptable to you: 1) the testimony in the jury trial is supposed to end at 5:00 p.m. If you are agreeable to schedule the argument after 5:00 p.m., I could leave federal court in Allentown and proceed directly to your courtroom which I should be able to do in five minutes; or 2) I could have another lawyer cover the argument for me but that did not work so well the last time we tried that; or 3) I am content to have the matters decided on briefs or 4) on behalf of my client, we would waive oral argument on behalf of [Appellant] and to allow [Appellees] to argue to you on Tuesday, April 23, 2019.

In response to [Appellant's] request for continuance, [Appellees] provided the [trial] court with correspondence indicating their opposition to the continuance request. The [trial] court refused the continuance application. A telephone call was placed to the offices of both [Appellant's and Appellees'] counsel given the proximity of the request and the decision to the scheduled argument. The continuance application with the refusal was signed and filed April 22, 2019.

On April 23, 2019, argument in this matter was held. Counsel did not appear on [Appellant's] behalf; Attorney Bench appeared and

argued on behalf of [Appellees]. All of the pending matters were taken under advisement and were decided based on consideration of all of the written filings.

On May 1, 2019, th[e trial] court ruled on the six matters pending in the above-captioned case. Pursuant to the May 1, 2019 Order, th[e trial] court: sustained preliminary objections in the nature of a demurrer and dismissed [Appellant's] Fourth Amended Complaint; the remaining preliminary objections were denied as moot. Further, th[e trial] court denied as moot [Appellees'] motion to compel, [Appellees'] motion for protective order and [Appellees'] motion to determine sufficiency, and denied [Appellees'] motion for sanctions. Finally, the [trial] court granted [Appellees'] motion for sanctions pursuant to Pa.R.C.P. 1023.2 and ordered [Appellant] to pay [Appellees] $2,500 in attorney's fees.

Trial Ct. Op., 7/1/19, at 1-5 (footnotes omitted).

Appellant timely appealed and submitted a request for transcription of the April 23, 2019 argument. However, Appellant did not pay for the cost of transcription. The trial court issued an order requiring the filing and service of a Pa.R.A.P. 1925(b) statement, and Appellant complied. The trial court issued a responsive Rule 1925(a) opinion.

Appellant presents the six issues, which we have reordered for review as follows:

1. Whether or not a state trial court could dismiss a case for counsel's non-appearance at oral argument where the state trial judge had actual notice that [Appellant's] counsel was physically present in a five day on[-]going jury trial in federal court . . . [.]

2. Whether or not Article[] VI, Clause II, of the United States Constitution called the Supremacy Clause mandates that a federal court's scheduling preempts a state court scheduling order[.]

- 5 -

3. Whether or not the doctrine of intrastate comity in state court conflicting date require that the earliest court scheduling order be given preference[.]

4. Whether or not [Appellant's] counsel ought to be censured on his non-appearance in state court before his federal court appearance[.]

5. Whether or not the order dismissing the four counts of [Appellant's] amended complaint violated the established rule that, on preliminary objections, facts are decided on facts most favorable to [Appellant.]

6. Whether or not the facts of this case support a sanction on [Appellant's] counsel[.]

Appellant's Brief at 6.

In her first four issues, Appellant asserts that that the trial court dismissed her action based on her counsel's failure to appear at argument on April 23, 2019. **See** Appellant's Brief at 21. Appellant asserts that her attorney requested a continuance and offered several alternatives, including having the trial court decide Appellees' preliminary objections on the briefs. **Id.** at 27. Appellant claims that her counsel proffered legitimate reasons for his failure to appear and that dismissal of her complaint was too harsh a remedy for her counsel's failure to appear for argument. **Id.**

"Our standard of review of a trial court's dismissal of a complaint is an abuse of discretion." **Norman for Estate of Shearlds v. Temple Univ. Health Sys.**, 208 A.3d 1115, 1119 (Pa. Super. 2019) (citation omitted). Similarly, we review the denial of a motion for continuance for an abuse of discretion. **Corrado v. Thomas Jefferson Univ. Hosp**., 790 A.2d 1022, 1035 (Pa. Super. 2001). "An abuse of discretion is more than just an error in

judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." *Id.* (citation omitted).

Instantly, Appellant assumes that the trial court dismissed her fourth amended complaint based on her counsel's failure to appear for oral argument. However, the trial court stated that it considered Appellees' preliminary objection based on the pleadings and the parties' briefs. Trial Ct. Op. at 8-9. The trial court explained that it did not dismiss Appellant's complaint based Appellant's counsel's failure to appear at the April 23, 2019 argument. *Id.* at 7. Because there is no support for Appellant's assumption that the trial court dismissed her action based on her counsel's failure to appear at the April 23, 2019 argument, we conclude that Appellant's first four issues are meritless.[4] *See Norman*, 208 A.3d at 1119; *Corrado*, 790 A.2d at 1035.

In her fifth issue, Appellant asserts that the trial court erred in sustaining Appellees' preliminary objection and dismissing her fourth amended complaint for legal insufficiency. *See* Appellant's Brief at 27-52.

---

[4] We add that Appellant's counsel did not pay for the transcription of the April 23, 2019 arguments. As noted by the trial court, the failure to ensure that this Court has a complete record would constitute an independent basis to find Appellant's first four issues waived. *See MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209, 1224 (Pa. Super. 2015) (*en banc*).

Initially, we summarize the relevant portions of Appellant's fourth amended complaint, which read as follows:

5. At all times referenced herein [Appellant] resided next to the rental property owned by [Appellees].

6. [Appellant] believes the property owned by [Appellees] has maintained a dangerous level of carbon monoxide at all relevant times hereto

\* \* \*

10. The chimney does not service any fireplace but is connected to the gas boiler.

11. An entity known as Community Action . . . was sponsoring a free weatherization program including an audit of the house prior to performing the actual weatherization.

12. The auditor who was assigned to audit [Appellant's] home was Matthew Woll . . . .

13. [Appellant] was approved by Community Action to receive the benefit.

14. Community Action hired Custom Weatherization to do the weatherization at [Appellant's] residence.

\* \* \*

17. In the process of completing the work, Custom Weatherization required access to the attic.

18. Prior to the involvement of Custom Weatherization, there was no access from to the attic.

19. [Appellant] gave Custom Weatherization permission to make a hole in the ceiling and walls as necessary to access the attic.

20. Custom Weatherization accessed the attic, and upon examination, determined that the chimney which was used by [Appellant's and Appellees' properties] had a hole in the chimney which was leaking carbon monoxide.

21. The leak from the chimney was specifically on [Appellees'] property and knew [sic] the program would not cover the repairs. . . .

22. At time of repairs, previous to this inspection, [Appellant] had installed a chimney liner on her portion of the chimney and the inspectors noted that the adjacent owner needed a similar set-up.

23. The chimney liner involved working from [Appellant's] basement to the roof of the property.

24. Community Action was not authorized to do the work because it was [Appellees'] property and they were not covered by the program, but because the property was rented to tenants who met the financial requirements, the property was otherwise covered.

25. Community Action warned [Appellant] that she was at risk for low level carbon monoxide and there was a substantial risk of high level carbon monoxide poisoning if the boiler on [Appellees'] rental property failed.

26. [Appellant] checked with her family doctor who determined that the blood test indicated low levels of carbon monoxide in her blood.

27. [Appellant] duly reported this problem, and [Appellees] were given the option of having their tenants apply for inclusion in the weatherization program, but [Appellee] forbade the tenants from applying.

28. [Appellees] were willing to risk the death of [Appellant] by carbon monoxide poisoning from its defective chimney.

29. [Appellant] has no records about her involvement with Community Action, and all records are in the control of Community Action . . .

Appellant's Fourth Am. Compl., 12/31/18, at ¶¶ 5-6, 10-14, 17-29. Appellant

listed four counts against Appellees: Count 1—Trespass *Quare Clausum Fregit*

and Section 158 of the Restatement (Second) of Torts, Count 2—Nuisance,

Count 3–Negligence, and Count 4—"Intentional Tort; Recklessly

Endangering." *Id.* at ¶¶ 30-60.

Appellant sought damages for "physical injury to her mind and body and damage to her realty." ***Id.*** at ¶ 36. Specifically, for her personal injuries, Appellant requested recovery for "physical and mental pain, anguish, anxiety, distress, discomfort, fear of illness and death and inconvenience as a direct result of carbon monoxide poisoning." ***Id.*** at ¶ 37. Appellant also sought damages for "the future procurement of medicines, medical attention, and other treatment rendered necessary by reason of aforesaid injuries." ***Id.*** ¶¶ at 37-38. For the injuries to her property, Appellant requested damages over $10,000 for "a diminution in the value of her realty because no one wants to buy a house where they may die by carbon monoxide poisoning," and "a permanent diminution of value of her realty because of reputation damage." ***Id.*** at ¶¶ 40-41. Lastly, Appellant sought punitive damages for Appellees' "intentional, willful, wanton, malicious and outrageous conduct." ***Id.*** at ¶¶ 42.

Appellees filed preliminary objections to Appellant's fourth amended complaint raising ten grounds for dismissing or striking portions of the complaint.[5] Of relevance to this appeal, Appellees argued that Appellant

---

[5] Specifically, Appellees' ten preliminary objections to Appellant's fourth amended complaint sought the following: (1) dismissal of the complaint because Appellant's repeated refusal to specify when the leaks occurred indicated that the "alleged condition, in fact, never actually existed;" Prelim. Objs. to Fourth Am. Compl., 1/11/19, at ¶ 20.; (2) more specific pleading of the injuries Appellant suffered, the amounts of Appellant's medical bills, and whether the trespass is permanent or abatable, ***id.*** at ¶ 37 (wherefore clause); (3) more specific pleading of Appellees' conduct supporting Appellant's

"fail[ed] to plead whether the alleged release of carbon monoxide was something that occurred only in the past or is ongoing." Prelim. Objs. to Fourth Am. Compl., 1/11/19, at ¶ 16. Appellees asserted that the lack of specificity as to the time of a leak impeded their ability to raise defenses under the statute of limitations and laches. *Id.* at ¶ 19. Appellees also claimed that time was essential to determine the possible forms of relief and damages. *Id.* at ¶¶ 51 & n.9, 53.

The trial court sustained this preliminary objection, reasoning that Appellant failed to set forth "the dates that any of the allegations took place" and "if the factual allegations alleged are ongoing or if they were cured at some point." Trial Ct. Op. at 10. The trial court further criticized Appellant for repeatedly asserting a "nonexistent intentional tort [of] reckless endangerment." *Id.* at 11.

On appeal, Appellant contends that that her complaint stated viable causes of action in nuisance or trespass. Appellant's Brief at 36-41. Appellant

_____

request for punitive damages, *id.* at ¶ 44 (wherefore clause); (4) striking Count 1 (trespass) as legally insufficient or striking damages for fear of injury, *id.* at ¶ 49 (wherefore clause); (5) striking Count 1 (trespass) as legally insufficient or striking damages for diminution in the value of property, *id.* at ¶ 54 (wherefore clause); (6) striking Count 2 (nuisance) as legally insufficient or striking damages for fear of injury, *id.* at 59 (wherefore clause); (7) striking Count 3 (negligence) as legally insufficiency or striking damages for fear of injury, *id.* at ¶ 65 (wherefore clause); (8) striking count for failure to plead the permanency of the nuisance and cognizable damages or striking damages for diminution in the value of property, *id.* at 70 ¶ (wherefore clause); (9) striking Count 4 (intentional tort) as legally insufficient and "plausibly sanctionable," *id.* at ¶ 75 (wherefore clause); (10) failure to verify the complaint, *id.* at ¶ 77.

argues that the failure to specify any dates in her complaint was not fatal to her claims. *Id.* at 42. Appellant alleges that Appellees' preliminary objection mischaracterized her claims as involving a specific leak. *Id.* Appellant insists that her claims were "about a chimney with a hole and a defective heating system which carries a risk of carbon monoxide poisoning." *Id.*

Appellant further contends that she does not remember the relevant dates, but pled sufficient facts for the times relevant to her complaint to be discovered. *Id.* at 43. Appellant asserts that the times relevant to her action were apparent because she alleged that Community Action audited her home and named the individual auditor and the contractor who attempted to correct the hole in the chimney. *Id.* Additionally, Appellant refers to an exhibit attached to Appellees' preliminary objections and asserts that the exhibit, a report for Appellant's doctor, is "important for the date (January 11, 2018)." *Id.* at 42. Referring to her allegations regarding the presence of carbon monoxide in her home, Appellant notes that she could hold Appellees liable for a continuing trespass. *Id.* at 38.

The following principles governing our review:[6]

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the

---

[6] We note that Appellant did not object when Appellees attached discovery materials to their preliminary objections to her fourth amended complaint. Moreover, as noted above, Appellant at times relies on the discovery materials. However, the trial court apparently did not consider those materials when dismissing Appellant's complaint. Therefore, we will not consider any information when reviewing the trial court's ruling.

> appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Am. Interior Constr. & Blinds Inc. v. Benjamin's Desk, LLC*, 206 A.3d 509, 512 (Pa. Super. 2019) (citation omitted).

Pennsylvania Rule of Civil Procedure 1019 states that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form. Pa.R.C.P. 1019(a). Additionally, Rule 1019 requires that "[a]verments of time, place and items of special damage shall be specifically stated." Pa.R.C.P. 1019(f). The purpose of the complaint is to "apprise the defendant of the nature and extent of the plaintiff's claim so that the defendant has notice of what the plaintiff intends to prove at trial and may prepare to meet such proof with his own evidence." *Discover Bank v. Stucka*, 33 A.3d 82, 86-87 (Pa. Super. 2011) (citation and quotation marks omitted). To that end, "[t]he complaint need not identify specific legal theories, but it must provide essential facts to support the claim." *412 N. Front St. Assocs., LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 656 (Pa. Super. 2016) (citation omitted).

This Court has noted that "[i]n every instance the allegation of time when the cause of action accrued must be sufficiently specific to enable the defendant to plead the statute of limitations if it is applicable." *Baker v. Rangos*, 324 A.2d 498, 509-10 (Pa. Super. 1974) (citation and quotation marks omitted). "The specificity with which time and place must be alleged to satisfy Rule 1019(f) 'depends on the nature of the complaint.'" *Id.* at 509. In so noting, this Court relied on a former edition of Goodrich Amram, *see id.* at 509-10, the current edition of which provides:

> The remedy for failing to specifically state time and place in a pleading depends on the significance of the failure. If place or time is significant, such as where different law may apply depending on the place, or where the statute of limitations is possibly involved, a preliminary objection in the form of a motion for a more specific complaint is available. If these factors are not significant, discovery offers an adequate remedy.

2 Goodrich Amram 2d § 1019(f):1.

The essence of a trespass action is the entry on another's property that directly infringes on that individual's right of exclusive possession of property. *Waschak v. Moffat*, 109 A.2d 310, 314 (Pa. 1954); *accord* Restatement (Second) of Torts § 821D, cmt. d (stating that "[a] trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it"). With respect to a claim of a physical trespass, such as an intruding tree branch, this Court has stated that

> an owner of realty has a cause of action in trespass against any person who has committed a trespass upon his lands, and it is not necessary for the landowner to allege any actual injury or damage as an element of the cause of action. There is no need to allege

- 14 -

harm in an action for trespass, because the harm is not to the physical wellbeing of the land, but to the landowner's right to peaceably enjoy full, exclusive use of his property. Moreover . . .

Any physical entry upon the surface of the land is a trespass, whether it be by walking upon it, flooding it with water, casting objects upon it, or otherwise. One may commit a trespass upon the vertical surface of another's premises, as well as the horizontal—as where he piles dirt or attaches wires against a boundary wall.

*Jones v. Wagner*, 624 A.2d 166, 169 (Pa. Super. 1993) (citations omitted).

This Court has defined nuisance as follows:

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

*Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge*, 102 A.3d 501, 509 (Pa. Super. 2014) (citations and footnotes omitted). Generally, liability for nuisance also requires "a significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." *Karpiak v. Russo*, 676 A.2d 270, 272 (Pa. Super. 1996).

The Pennsylvania Supreme Court has distinguished trespass and nuisance as follows:

In legal phraseology, the term nuisance is applied to that class of wrongs that arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, or from his own improper, indecent, or unlawful personal conduct,

- 15 -

> working an obstruction or injury to a right of another, or of the public, and producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage. The distinction between trespass and nuisance consists in the former being a direct infringement of one's right of property, while, in the latter, the infringement is the result of an act which is not wrongful in itself, but only in the consequences which may flow from it.

*Waschak*, 109 A.2d at 313-14 (citations and quotation marks omitted).

Reported decisions in Pennsylvania have generally discussed odors, dust, and gasses under the principles of nuisance. *See Folmar v. Elliot Coal Min. Co.*, 272 A.2d 910, 912 (Pa. 1971); *Waschak*, 109 A.2d at 317; *Evans v. Moffat*, 160 A.2d 465, 467 (Pa. Super. 1960); *accord Karpiak*, 676 A.2d at 275. We have found no reported cases in Pennsylvania applying liability principles of trespass by a physical thing to an intrusion by a gas or dust. *Compare Jones*, 624 A.2d at 169 (noting that "a branch overhanging a landowner's property line is a technical trespass" and that "[t]he redressable harm caused is that of the trespass onto [the] property, not physical damage done to [the land]"), *with Karpiak*, 676 A.2d at 275 (declining to address "whether dust is sufficient enough of a particle to constitute a trespass" because evidence failed to establish that the dust caused harm to the plaintiffs' persons or property).

Moreover, there is a distinction between permanent versus continuing causes of actions. If, for example, a trespass is permanent, "there can be but a single action therefor to recover past and future damages and the statute of limitations runs against such cause of action from the time it first occurred, or

- 16 -

at least from the date it should reasonably have been discovered." ***Sustrik v. Jones & Laughlin Steel Corp.***, 197 A.2d 44, 46-47 (Pa. 1964) (citations omitted). Where the trespass or nuisance is continuing, however, an aggrieved party may be able to maintain "a succession of actions" based on separate injuries. ***Kowalski v. TOA PA V, L.P.***, 206 A.3d 1148, 1161 (Pa. Super. 2019).

In distinguishing between a permanent versus a continuing cause of action, a court must consider "a variety of factors, including: (1) the character of the structure or thing which produces the injury; (2) whether the consequences of the trespass will continue indefinitely; and (3) whether the past and future damages may be predictably ascertained." ***Id.*** at 1160 (citation omitted). If, for example, "it is impossible to know exactly how many incidents of trespass will occur in the future, or the severity of the damage that may be caused, such that the full amount of damages cannot be calculated in a single action, the trespass is continuing." ***Id.*** at 1161 (citation omitted).

Instantly, we understand the parties' frustration with the quality of Appellant's pleadings. It is apparent that Appellant's fourth amended complaint contains no references to dates. ***See*** Appellant's Fourth Am. Compl., 12/31/18, at ¶¶ 5-6, 10-14, 17-29. Moreover, as noted by Appellees, greater specificity as to the times of certain allegations, such as her discovery of the defective condition on Appellees' property, may have relevance to possible defenses under the statute of limitation or laches or other matters

such as damages. **See Kowalski**, 206 A.3d at 1160-61; **see also Cassel-Hess v. Hoffer**, 44 A.3d 80, 88-89 (Pa. Super. 2012) (concluding that nuisance claims based on a mosquito-infested lake were barred because the plaintiff failed to file her complaint within two years of the time the lake became a permanent feature on the defendants' land).

We note that that Appellant's arguments that support her fifth appellate issue rely on a patchwork of legal theories. For example, Appellant variously alleges that the hole in the chimney constitutes a defective condition; that carbon monoxide should be considered a thing that entered her property; and that any impact from any molecule of carbon dioxide emitted from the hole in the chimney could sustain damages for pain and suffering, mental anguish, and fear of death. For the reasons stated herein, our review compels us to conclude that trial court erred in dismissing her fourth amended complaint with prejudice. Therefore, we need not consider all of Appellant's allegations.

Viewing Appellant's fourth amended complaint as a whole, the allegations are relatively straightforward. There is a hole in Appellees' side of the chimney, through which a low level of carbon monoxide is escaping and migrating into Appellant's home. Appellant's Fourth Am. Compl., 12/31/18, at ¶¶ 20-21, 25. Appellant has had low amounts of carbon monoxide in her blood. **Id.** at ¶ 26. If Appellees' boiler fails, there is a substantial risk that a high level of carbon monoxide would be released, which carries with it the possibility of carbon monoxide poisoning. **Id.** at ¶ 25. Appellant has

approached Appellees about fixing the hole, but Appellees refused. *Id.* at 27-28.

We note that Appellant's fourth amended complaint does not specifically plead the amount of carbon dioxide that migrated into her home or that she suffered a significant harm. *See Karpiak*, 676 A.2d at 272. Nevertheless, our standard of review requires that we confine our review to the complaint at issue, draw reasonable inferences in Appellant's favor, and resolve any doubts about Appellant's ability prove the magnitude of the intrusion and a significant harm in Appellant's favor. *See Am. Interior Constr.*, 206 A.3d at 512. Accordingly, it may be possible for Appellant to prove a significant harm based on an actual and ongoing exposure to carbon monoxide from the hole in the chimney.

In sum, we agree with Appellant to the extent that she argues that the dismissal of her fourth amended complaint was premature based on the trial court's ruling that she failed to plead material dates. *See id.*; *see also Kowalski*, 206 A.3d at 1160-61. Accordingly, we are constrained to reverse the trial court's order dismissing the complaint with prejudice and to remand this case for further proceedings.[7]

In her final issue on appeal, Appellant asserts that in light of her prior arguments on appeal, the trial court erred when imposing sanctions. Appellant's Brief at 56. Although we have upset the trial court's decision to

---

[7] On remand, the trial court will be free to consider Appellees' remaining preliminary objections.

dismiss Appellant's fourth amended complaint, the record reveals no basis to disturb the imposition of attorney's fees.

Initially, we note that Appellant's claim is waived. Appellant's counsel fails to develop any meaningful response to the trial court's ruling under Pa.R.C.P. 1023.1 and 1023.4. **See** Trial Ct. Op. at 11-12. Instead, counsel, in a single sentence, merely incorporates his prior arguments that the trial court sanctioned Appellant based on his failure to appear at the April 23, 2019 argument and that the fourth amended complaint stated valid claims. Appellant's Brief at 56.

In any event, we discern no abuse of discretion in the imposition of $2,500 in attorney's fees. **See US Coal Corp. v. Dinning**, 222 A.3d 431, 442 (Pa. Super. 2019) (noting that an abuse of discretion standard applies to a review of an award of sanctions under Pa.R.C.P. 1023.4). Instantly, the trial court stated that "[i]nstead of becoming clearer as time moves forward, the pleadings are circular with no clarity." Trial Ct. Op. at 12. The record further supports the trial court's conclusion that, over the course of four amended pleadings, Appellant's counsel did not respond in any meaningful fashion to Appellees' preliminary objections or the trial court's orders to clarify the complaint. Under the circumstances of this case, we agree with the trial court that counsel's conduct evinced an improper purpose, such as needlessly delaying or increasing the cost of litigation. Therefore, no relief from the award of sanctions is due.

Order affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/20