J-A22026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT S. GLISTER AND VALERIE J. GLISTER, HIS WIFE, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1308 WDA 2023 |
| JAMES HOYLE AND THERESA HOYLE, HIS WIFE | : | |
| | : | |

Appeal from the Order Entered September 20, 2023
In the Court of Common Pleas of Greene County Civil Division at No(s):
66 AD 2021

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: January 13, 2025**

Robert S. Glister and Valerie J. Glister, his wife, (collectively the "Glisters") appeal from the order dismissing their complaint against James Hoyle and Theresa Hoyle, his wife, (collectively, the "Hoyles") for claims of enforcement of a zoning ordinance and a private nuisance. We affirm.

The trial court summarized the facts as follows:

> This matter involves two land owners, each owning property on Clarksville Road in Morgan Township, Greene County. The Parcels are directly across Clarksville Road from one another. The [Glisters'] property consists of their primary residence, where they have lived since building their home in 1980. [The Hoyles] own three tax parcels on the opposite side of Clarksville Road. They own Tax Parcel I.D. No. 15-01-10[4]A which has been utilized by [the Hoyles] as a licensed salvage yard and auto recycling business since 1988. It is not at issue in this matter. [The Glisters] cannot see Tax Parcel I.D. No. 15-01-104A from their home and have no issue with any of [the Hoyles'] uses

thereon. [The Hoyles] own Tax Parcel I.D. Nos. 15-01-125A. and 15-01-125B which they acquired in 2014 and 2015 (the "Subject Parcels"). The Subject Parcels are directly across Clarksville Road from [the Glisters'] property. In 2016, [the Hoyles] received an order granting a curative amendment which changed the zoning designation of the Subject Parcels from Rural Residential Zone to Rural Opportunity Zone. *See* Complaint[, filed 2/2/21,] at 2. This change in zoning designation allowed [the Hoyles] to utilize the Subject P[arcels] as a "distribution center/facility." However, [the Glisters] aver that the [Hoyles] continue to utilize the Subject Parcels as a junkyard or salvage yard in violation of the Jefferson Morgan Multi-Municipal Zoning Ordinance. *Id.* at 3. Based on this, the [Glisters] brought the instant action seeking Count I, for Enforcement of a Zoning Ordinance, and Count II, to Abate a Private Nuisance.

Trial Court Order and Opinion ("Trial Ct. Op."), filed 9/20/23, at 1-2.

In Count I of their complaint, the Glisters alleged that the Hoyles' use of the Subject Parcels violated the zoning ordinance because they were not using the Subject Parcels as a permissible distribution center/facility, but rather were using them as an impermissible junkyard. *See* Complaint, at ¶¶ 12-14. The Glisters asserted that they alerted Jefferson Township about the alleged zoning violation and had provided Jefferson Township with a 30-day notice of the instant action in accordance with 53 P.S. § 10617.[1] *Id.* at 10, 16. In Count II of their complaint, the Glisters alleged that the Hoyles' use of the Subject Parcels as a junkyard was a private nuisance. *Id.* at 20. They

_____

[1] Section 617 of the Pennsylvania Municipalities Planning Code permits a private cause of action for violation of a zoning ordinance. *See* 53 P.S. § 10617; *Karpiak v. Russo*, 676 A.2d 270, 275 (Pa.Super. 1996). Notice of such action must be given to the municipality at least 30 days prior to the time the action is begun by serving a copy of the complaint on the governing body of the municipality. 53 P.S. § 10617.

asserted that the rows and piles of crushed cars and car parts on the Subject Parcels "create[d] an unsightly and annoying view from [their] property, create[d] unwanted noise and distraction interfering with their enjoyment of their property, and . . . lower[ed] their property value with what is actually a junkyard and/or salvage yard being located directly across from their property[.]" *Id.* at 19, 21.

A bench trial was held on January 10, 2023. The court found that the Hoyles were not in violation of the Jefferson Morgan Multi-Municipal Zoning Ordinance because their use of the Subject Parcels was consistent with the definition of a distribution facility under the ordinance. Trial Ct. Op. at 6. The court further found that there was insufficient evidence to support the Glisters' claim for a private nuisance. *Id.* at 7-8. The court thus denied relief. *Id.* at 8.

The Glisters filed a post-trial motion, challenging the verdict as against the weight of the evidence. The trial court denied the motion, and this timely appeal followed. The Glisters raise the following issue: "Did the trial court abuse its discretion in finding against the [Glisters] and dismissing their claims because such a decision was against the weight of the evidence presented?" Glisters' Br. at 5.

At the outset, we must consider whether this Court has jurisdiction over this appeal. The Commonwealth Court "has jurisdiction over appeals from final orders of the [C]ourts of [C]ommon [P]leas in any case implicating the application, interpretation or enforcement of a local ordinance." *Commonwealth v. Asamoah*, 809 A.2d 943, 945 n.1 (Pa.Super. 2002)

(citing 42 Pa.C.S.A. § 762(a)(4)(i)(B)). However, an objection to this Court's exercise of jurisdiction over an appeal that ought to have been taken to Commonwealth Court may be waived if the appellee does not lodge a timely objection. *See* 42 Pa.C.S.A § 704(a); Pa.R.A.P. 741(a).

Here, the Hoyles did not object to this Court's exercise of jurisdiction. Thus, pursuant to 42 Pa.C.S.A § 704(a) and Pa.R.A.P. 741(a), the appeal is perfected, and we proceed to address the merits of the appeal. *Asamoah*, 809 A.2d at 945 n.1; *Commonwealth v. Scott*, 878 A.2d 874, 877 n.3 (Pa.Super. 2005).

The Glisters first argue that the verdict is against "the great weight of the evidence[.]" Glisters' Br. at 14. According to the Glisters, a distribution facility is a permitted use in a Rural Opportunity Zoning District, while a junkyard is not. *See id.* at 10 (citing R.R. 231); *see also* R.R. 233. They argue that the court erred in finding that the Hoyles were operating a "distributional facility" rather than a "junkyard" on the Subject Parcels. *Id.* at 11. They contend that the activities occurring on the Subject Parcels met the definition of a "junkyard" under the ordinance and did not constitute a "distribution facility." *Id.* They argue that the evidence presented at trial "clearly identified that scrap from vehicles and other items were being stored on said property and could be stored on said property for a significant period of time." *Id.* The Glisters conclude that the core of the Hoyles' activities on the Subject Parcels was the continuation of their original junkyard business,

including the storage of scrap metals on the Subject Parcels, which was not permitted in that zoning district under the ordinance. *Id.* at 22-23.

"On appeal from an order issued pursuant to [Section 10617], '[our review] . . . is severely restricted . . . . We will not reverse if apparently reasonable grounds exist for the relief ordered and no errors or inapplicable rules of law were relied on.'" **Leinberger v. Stellar as Tr. of Deborah E. Stellar Revocable Tr.**, 240 A.3d 673, *4 (Pa.Cmwlth. 2020) (unreported decision)[2] (alterations in original) (quoting **Siegmond v. Duschak**, 714 A.2d 489, 491 n.1 (Pa.Cmwlth. 1998)).

The trial court may grant relief on a claim that the verdict is against the weight of the evidence only if the verdict is so contrary to the evidence as to shock one's sense of justice. **See Haan v. Wells**, 103 A.3d 60, 70 (Pa.Super. 2014). We review the trial court's decision in this regard for abuse of discretion. **Id.** To the extent this appeal requires us to interpret the local zoning ordinance, our standard of review is *de novo* and our scope of review is plenary. **See Cogan Props., LLC v. E. Union Twp. Zoning Hearing Bd.**, 318 A.3d 981, 988 (Pa.Cmwlth. 2024).

The Jefferson Morgan Multi-Municipal Zoning Ordinance defines a distribution facility as "[a]ny premises where part thereof which provides logistic support for businesses such as freight management, inventory control, storage, packaging, and consolidation of goods for distribution." Jefferson

---

[2] The Commonwealth Court's unreported decisions filed after January 15, 2008 are citable for persuasive value. **See** Pa.R.A.P. 126(b).

Morgan Multi-Municipal Zoning Ordinance Chapter 10, Section 10.3. The ordinance defines a junkyard as "[a]n area or land, with or without buildings, where scrap, dismantled, or discarded materials are bought, sold, exchanged, abandoned or stored." *See* R.R. 236.

At trial, James Hoyle testified that he purchased the Subject Parcels because his junkyard business was expanding, and he wanted to convert the farmhouse on the property to an office, make a bigger lot for customers and trucks to go in and out, and put a building up. N.T., 1/10/23, at 106. He stated that after he purchased the Subject Parcels, he went to the zoning board and was eventually granted permission to use the Subject Parcels as a distribution center. *Id.* at 108-09. Hoyle testified that he and his family made the Subject Parcels into a distribution center, as required by the zoning board, where they sort car parts, package them, ship them, and "then the carcass of the car goes back onto the original property." *Id.* at 109. He stated that a person could not go onto the Subject Parcels and look for a part like at a traditional junkyard. *Id.* Rather, he said the person would "have to come to our office on [the Subject Parcels], and then we would get the part where it was at" and bring it out them. *Id.*

The Hoyles' son, Jimmy Hoyle, also testified about the operations that take place on the Subject Parcels. He stated that the Hoyles purchase cars, and the cars go onto the Subject Parcels. *Id.* at 163. They then weigh the cars and move them with a front loader to an area behind their office. *Id.* at 163-64. The cars are ultimately processed in a large building on the Subject

Parcels, which includes taking an inventory and pictures of what car parts are resalable. *Id.* at 164. He then depollutes the cars, which consists of draining all the oils of the cars. *Id.* at 164-65. Jimmy Hoyle said he then takes off the exhaust systems and the tires from the cars. *Id.* at 165. He puts the "good tires" in a pile for resale and places any bad parts inside the cars that will go into the crusher. *Id.* He described that he consolidates the materials as follows:

> I take the car that's going to be smashed, and I scoop up the loose stuff that we have, and I stick it in through the roof. And I put as much as I possibly can in each car, and then I carry it over to put it in a crusher.

*Id.* at 184. The cars are then taken to the crusher in the original junkyard. *Id.* at 165-66, 194. He also stated that all the packaging of the items that customers buy online from them occurs in the office or the big building, which are located on the Subject Parcels. *Id.* at 184.

Jimmy Hoyle further testified that the Subject Parcels provide "logistic support" as required by the ordinance's definition of a distribution facility:

> [Hoyle's Counsel] Where -- is there a particular place where there is logistic support occurring?
>
> [Jimmy Hoyle] Yes.
>
> Q And where would that be?
>
> A Right in our lot.
>
> Q Where does freight management occur and what is freight management?
>
> A Everything that we put in totes we get -- waiting to be put into the trucks to go to the next location that they go.

Q And how do you do -- where do you do your inventory control?

A I inventory inside the building, and then that goes out on the -- the other parcel.

Q And then the storage, you've already described some of the storage --

A Yeah.

Q -- for logistic support and freight management. Is there anything to expand on as far as storage goes on [the Subject Parcels] other than what you said about in the building and the metals

A No. The cars that come in are sat behind the office, and the metals are back farther. I have a road in between the last trailer and the metal piles to get my cars.

*Id.* at 183-84.

Jimmy Hoyle also testified that nothing sits on the Subject Parcels for over 30 days and there is a constant rotation of cars moving through the process. *Id.* at 205, 212. He stated, "The piles get turned over. It could always be a large pile, but it's constantly moving" and "[t]here's cars moving both ways all the time . . . I'll bring one -- a car down to make a spot for the next one I have on the lift, and that car comes down and goes straight over and gets stuffed in the crusher. That one's not sitting there either." *Id.* at 212-213.[3]

_____

[3] Theresa Hoyle, Jimmy Hoyle's mother, also testified that the township imposes a 30-day time limit for the cars get processed on the Subject Parcels. N.T. at 160. She stated that her son cannot process every car in one day so the cars "have to sit there for a couple days or however," but that Jimmy Hoyle "moves them." *Id.*

The trial court found that the Hoyles' use of Subject Parcels was consistent with the operation of a distribution facility, as defined under the ordinance. The court did not err. The Hoyles received permission from the township to use the Subject Parcels as a distribution center. The evidence showed that the Subject Parcels are used in accordance with the operation of a distribution center. The evidence was that the Subject Parcels provided "logistic support" for the Hoyles' junkyard business, including freight management, inventory control, packaging, and consolidation of goods for distribution. Contrary to the Glisters' assertion that the cars are stored on the Subject Parcels "for a significant period of time," the evidence was that these vehicles are constantly moving through the process and sit there for less than 30 days. The trial court did not abuse its discretion in rejecting the Glisters' weight challenge.

The Glisters next argue that the court erred in finding that they failed to establish a private nuisance. Glisters' Br. at 23. They argue that they have been subjected to lights that shine throughout the night from the Hoyles' property and the lights are aimed directly at their home. *Id.* at 25. The Glisters also argue that they have been subjected to dust pollution from the Hoyles' business operations. *Id.* at 26. They maintain that "both smoke and dust generated from coal that heats the [Hoyles'] office and warehouses prevents [them] from parking their cars outside of their residence and utilizing the front area of their residence." *Id.* Lastly, the Glisters argue that "significant amounts of trash and debris from [the Hoyles'] junk yard have intruded onto

[their] property over the course of several years" and "[s]aid debris has also affected said real property in that [they] have been forced to abandon their front yard and front porch as an entertainment venue for friends and guests." *Id.*

We review the judgment following a non-jury verdict to determine "whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." *El-Gharbaoui v. Ajayi*, 260 A.3d 944, 958 (Pa.Super. 2021).

Restatement (Second) of Torts § 822 contains the authoritative definition of a private nuisance. *Karpiak*, 676 A.2d at 272. Section 822 provides:

> **§ 822. General Rule**
>
> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
>> (a) intentional and unreasonable, or
>>
>> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Restatement (Second) of Torts § 822 (1979).

A defendant is not subject to liability for an invasion unless the invasion caused significant harm, which is defined as:

> **§ 821F. Significant Harm**
>
> There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose.

- 10 -

Restatement (Second) of Torts § 821F (1979).

The Comment to section 821F further explains:

> By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interests before he can have an action for either a public or a private nuisance . . [I]n the case of a private nuisance, there must be a real and appreciable interference with the plaintiff's use or enjoyment of his land before he can have a cause of action . . .
>
> When [the invasion] involves only personal discomfort or annoyance, it is sometimes difficult to determine whether the invasion is significant. The standard for the determination of significant character is the standard of normal persons or property in the particular locality. If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant.

*Id.* at Comment c, d.

Here, the trial court found that while the Hoyles' property may be an eyesore, the Glisters failed to establish, as a matter of law, that the invasion was seriously annoying or intolerable such that it was private nuisance. Trial Ct. Op. at 7. This decision is supported by the record and we perceive no error of law.

At trial, Robert Glister testified that a green light coming from the Hoyles' property "cast[s] light into my space which I don't like." N.T. at 25-26. He stated that the light stays on throughout the night. *Id.* However, James Hoyle testified that the lights are LED Christmas lights that they keep on year-round because the residents of the town like them. *Id.* at 110. He also said

that they have flood lights on the backside of the office. *Id.* at 111. He testified that they have no lights on their property that are aimed toward the Glisters' property. *Id.* Moreover, Robert Glister conceded that the lights are no brighter than the moonlight. *Id.* at 60.

Further, the Glisters' claim that smoke and dust emanating from the Hoyles' property prevents them from parking their cars outside of their residence and utilizing the front area of their residence is unsupported by the record. The testimony by the Glisters was that they kept their cars in their garage by choice and not to protect them from any alleged dust or smoke. *Id.* at 58. They further testified that they have always used the back porch, and not the front porch, even before the Hoyles acquired the Subject Properties because their backyard is beautiful. *Id.* at 59, 90-91. Moreover, both James Hoyle and Jimmy Hoyle testified that their business does not create any dust or require the burning of anything. *Id.* at 110-11, 192. Rather, they only burn their own personal garbage. *Id.* at 110. There was also no evidence that the alleged dust and smoke caused the Glisters to have any health problems or affected their ability to conduct their day-to-day activities. *See Karpiak*, 676 A.2d at 274 (finding that dust was not sufficient to constitute a private nuisance when appellants failed to show the dust caused health problems or affected their daily activities).

The Glisters' final claim that "significant amounts of trash and debris" from the Hoyles' property have intruded onto their property is likewise not

supported by the record. In support of this claim, the Glisters point to only the following testimony by Robert Glister:

> Q Wind blows bumpers across the street?
>
> A There's at least one. And tarps. We've had a tarp blown across. Some parts and pieces of, I don't know, hoses or whatever. You know, you get a wind up there, stuff comes over.

Glisters' Br. at 26 (citing N.T. at 59). A single bumper and a tarp, along with some parts of hoses, is not "significant amounts of trash and debris."

In sum, there was no testimony offered to show that the Hoyles' use of their property restricted the Glisters in any way from the full use and enjoyment of their property or caused them significant harm. Accordingly, the Glisters failed to prove the existence of a private nuisance.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/13/2025