Erick **MOHR** and Miriam Mohr, Appellants,

v.

**MIDAS REALTY CORPORATION and Stan and Lynn Building Partnership,** Appellees.

No. 87–1056.

Supreme Court of Iowa.

Nov. 23, 1988.

M. Gene Blackburn and Daniel W. Willems of Law Offices of M. Gene Blackburn, P.C., Fort Dodge, for appellants.

John A. Templer, Jr. and David J. Darrell of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

The narrow question posed by this appeal is whether the law of nuisance is broad enough to comprehend a claim of intentional interference with a view over private property. The property in question consists of two adjoining lots located on a commercial "strip" along Highway 20 in Fort Dodge, Iowa. Plaintiffs Erick and Miriam Mohr own an office building situated on the easternmost lot, with parking in front for tenants and customers.[1] In 1983, Mohr's neighbors to the west, defendants Midas Realty Corporation and Stan and Lynn Building Partnership, built a muffler shop on the front of their property with parking in the rear. This new building, though fully complying with zoning restrictions and setback lines, blocks all view of Mohr's building to traffic approaching from the west on Highway 20.

Mohr sued Midas for "unreasonable interference with Plaintiff's lawful use and enjoyment of his private property." He claimed damages for both loss of enjoy-

ment and diminished rental and resale value. A second count of the petition sought abatement of the alleged nuisance. Midas answered by asserting, among other things, that Mohr's petition failed to state a claim upon which relief could be granted.

The case came before the trial court on Midas' motion for summary judgment. *See* Iowa R.Civ.P. 237. The court found that no dispute existed regarding the material facts giving rise to Mohr's claim of nuisance. It concluded, however, that Iowa law furnishes no cause of action in nuisance for interference with view of property and dismissed Mohr's petition. On Mohr's appeal from that adverse judgment, we affirm the decision of the district court.

I. Fundamental to Mohr's appellate argument is the claim that Midas' alleged interference with Mohr's use and enjoyment of his property raises a fact question of reasonableness properly reserved for a jury and, hence, unsuitable for resolution by way of summary judgment. Mohr successfully persuaded the district court, and now urges on appeal, that the question of reasonableness could not be reached until the court first determined, as a matter of law, whether the right Mohr claims to have been invaded is one for which the law provides protection and relief.

Both parties agree that a private nuisance is generally defined at common law as "a substantial and unreasonable interference with the interest of a private person in the use and enjoyment of his land," *Ryan v. City of Emmetsburg*, 232 Iowa 600, 604, 4 N.W.2d 435, 439 (1942); *accord* Restatement (Second) of Torts § 821D (1977). Not every interference with a person's use and enjoyment of land is actionable, however. *See generally* Restatement (Second) of Torts § 822 comment (a). Here the trial court focused on a preliminary determination whether Midas' action, reasonable or unreasonable, interfered with a legally protected interest belonging to Mohr. Given that the controversy cen-

1. For ease of identification, we shall refer to plaintiffs in the singular as "Mohr" and to de- fendants collectively as "Midas."

tered only on the legal consequences flowing from undisputed facts, resolution by way of summary judgment was proper. *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988).

II. We turn then to an examination of the interest Mohr seeks to protect. Although the petition alleges interference with light, air, and view, counsel conceded in argument that the gravamen of Mohr's claim is that Midas' muffler shop blocks the motoring public's view of Mohr's building, thereby diminishing its value as a commercial property. Thus, Mohr argues, Midas' enhancement of its own property at Mohr's expense gives rise to a cause of action under nuisance law where the parties' competing interests in the use and enjoyment of land are weighed according to a reasonableness standard. *See* Restatement (Second) of Torts § 821D.

Midas responds by asserting that Mohr's claim, though styled as a nuisance action, in fact harkens back to the long-discredited English common law doctrine of ancient lights. Under that doctrine, a landowner acquired a negative prescriptive easement for sunlight across an adjoining landowner's property and could prevent the adjoining landowner from obstructing the light once the easement was established by the passage of time. *See Prah v. Maretti*, 108 Wis.2d 223, 321 N.W.2d 182, 188 (1982) (describing doctrine of ancient lights). Early in this country's history, however, every state considering the doctrine, including Iowa, repudiated its premise as inconsistent with the needs of a developing country. *See id.; see also Morrison v. Marquardt*, 24 Iowa 35, 60–67 (1867) ("surely, such an easement, uncertain in its extent and duration, without any written or record evidence of its existence, fettering estates and laying an embargo upon the hand of improvement which carries the trowel and the plane, and, as applied to a subsequent purchaser, against the spirit of our recording acts, ... should not be held to exist by mere implication"); *Callahan v. City of Nevada*, 170 Iowa 719, 724, 153 N.W. 188, 189–90 (1915) ("the doctrine of ancient lights does not obtain in this state, and no property owner is compelled when erecting his building to afford an abutter either light or air"). In 1873, the Iowa legislature passed a law, still in effect, specifically proscribing the implied acquisition by adjoining landowners of "any easement of light or air, so as to prevent the erection of any building on such land." Iowa Code § 564.2 (1987).

Mohr vigorously argues that his claim of nuisance stands independent from any claim of prescriptive easement for light and air, but we find the argument unpersuasive. We recognize that while disavowing any cause of action for interference with light, air, and view unless granted by express contract, our prior cases have left unanswered the question whether such claim might be sustained under the doctrine of nuisance. *See McCartney v. Schuette*, 243 Iowa 1358, 1361, 54 N.W.2d 462, 463 (1952). Squarely confronted with the question, however, we are convinced that giving vitality to such a cause of action in nuisance would be the same thing as granting a prescriptive easement. In other words, recognizing a landowner's right to enforce a nuisance claim for intentional interference with light, air, or view would be indistinguishable from granting an unrecorded interest adjunct to that landowner's property rights for the same purpose. For a variety of reasons, we think such an expansion of the law of nuisance would be unwise, at least in regard to the interference with view claimed here.

As aptly noted by the trial court, extending the law of nuisance to encompass obstruction of view caused by lawful construction of a neighboring building would unduly restrict a landowner's right to the free use of property, interfere with established zoning ordinances, and result in a flood of litigation. Because every new construction project is bound to block someone's view of something, every landowner would be open to a claim of nuisance. If the first property owner on the block were given an enforceable right to unobstructed view over adjoining property, that person would fix the setback line for future neighbors, no matter what zoning ordinances provide. The practical implication of such

a right would be the need of every "servient" owner to obtain a waiver of the easement of view created in the "dominant" landowner. Such obstacles to land ownership and development, for the sake of a clear view, hardly commend themselves.

Perhaps more importantly, this court observed in the *Marquardt* case over 100 years ago that an unwritten but nonetheless enforceable right to unobstructed view would frustrate the very purpose of our recording statutes: to make sure that all rights in property are recorded and thus discoverable by diligent title search. *See* 24 Iowa at 64; Iowa Code §§ 558.11, 558.41. As the case before us demonstrates, the uncertainty of whether an adjoining owner might come forward with a claim of nuisance to challenge an otherwise lawfully constructed building would be a latent defect in every land transaction.

In the absence of evidence or authority to the contrary, we find no compelling reason to recognize an enforceable right of view over private property. Accordingly, we hold there can be no cause of action grounded in nuisance for blocking that view.

Our ruling is necessarily limited to those nuisance claims based on interference with view, not air or light. First, unobstructed view is the only right claimed to be invaded here. Second, at least two other jurisdictions have advanced persuasive reasons for retreating from their earlier repudiation of the doctrine of ancient lights, and have allowed nuisance actions for deprivation of sunlight in recognition of the emerging utility of solar energy. *See Prah v. Maretti*, 321 N.W.2d at 189; *Tenn v. 889 Associates, Ltd.*, 127 N.H. 321, 327, 500 A.2d 366, 370 (1985). *But see Sher v. Leiderman*, 181 Cal.App.3d 867, 875–79, 226 Cal.Rptr. 698, 701–04 (1986). We also note that our own legislature has statutorily addressed the need for access to solar energy by expressly legalizing written solar access easements. *See* Iowa Code § 564A.1, .7 (1987).

The policies underlying departure from the majority rule for the sake of preserving access to solar energy are clearly missing in the case before us, however. The trial court recognized this failing and properly ruled, as a matter of law, that Mohr stated no cause of action for which relief could be granted. We therefore affirm the trial court's summary dismissal of Mohr's petition.

AFFIRMED.