728 S.E.2d 533

**Robert P. BANSBACH and Rickie Bansbach, Petitioners**

v.

**Daniel HARBIN and Mary Fanok, Respondents.**

No. 11–0355.

Supreme Court of Appeals of West Virginia.

Submitted May 22, 2012.

Decided June 12, 2012.

Patrick F. Roche, Esquire, Fairmont, WV, for Petitioners.

D. Conrad Gall, Esquire, Fairmont, WV, for Respondents.

McHUGH, Justice:

Petitioners Robert P. and Rickie Bansbach seek relief from the January 28, 2011, order of the Circuit Court of Marion County denying their motion for a preliminary injunction and dissolving a previously-issued temporary injunction.[1] Petitioners sought injunctive relief in connection with allegations that their neighbors, Respondents [2] Daniel Harbin and

---

1. The trial court issued a temporary injunction against the Respondents by order entered on May 21, 2010.

2. While Respondents filed a brief, they did not appear for oral argument. Because Respondents did not request a waiver of oral argument under Rule 20(f) of the Revised Rules of Appellate Procedure despite the issuance of two separate Court notices advising them how to proceed if they did not seek oral argument, the Court pre-

Mary Fanok, were engaging in conduct which constituted both a nuisance and harassment. After taking evidence on this matter,[3] the trial court ruled that Petitioners had failed to demonstrate that Respondents' conduct constituted a private nuisance or that Respondents' speech, both verbal and written, was unlawful. Arguing that the trial court erred in ruling that the subject conduct did not come within the parameters of nuisance law and that the trial court wrongly concluded that the speech at issue was protected, Petitioners seek to reverse the lower court's ruling.

## I. Factual and Procedural Background

Since August 2005, Petitioners have resided on approximately ninety acres of land situated in the Mannington District of Marion County. Respondents live together on eighty-one acres of land owned by Mary Fanok that borders the northeast section of Petitioners' property.[4] After coexisting without incident for approximately three years,[5] a dispute arose in 2009[6] that precipitated the current state of affairs. Immediately after the dispute arose, Petitioners allege that Respondents undertook a variety of efforts with the express aim of harassing them.

Included in the so-called "harassment campaign" was the creation of a second junkyard[7] by Respondents on the Fanok property. Petitioners contend that this junkyard interrupted the pastoral view they had previously enjoyed from their residence. In addition to hauling assorted items[8] to the newly-created junkyard, Respondents posted three signs purportedly directed at Mrs. Bansbach[9] which were visible from the road to passersby. Those signs stated: (1) "do not stare you may go blind nosey bitch"; (2) "coming soon D and M hog farms"; and (3) "beep three times for entry twice when leaving nosey bitch log in." Petitioners further allege that Respondents yelled profanities and insults when driving by their home. Other alleged incidents include Mary Fanok stalking one of Petitioners' daughters while she was jogging and Daniel Harbin using his vehicle to prevent Mrs. Bansbach from moving her ATV vehicle for a period of time.[10]

As a result of the above-described occurrences and a few others,[11] Petitioners filed a complaint on January 7, 2010, with the Cir-

sumed that counsel intended to appear for the scheduled argument. At no time did Respondents' counsel inform the Court that he would not be appearing for oral argument. Not only do we take notice of counsel's disregard for both the rules of this Court and professional courtesy in general, but we further indicate our strong disapproval of his inactions in this regard.

3. Hearings were held on July 9, May 20, and October 21, 2010.

4. A third parcel of land, consisting of eighty-two acres, is owned by Mr. Harbin's parents and leased to Daniel Harbin as a tenant-at-will. That piece of property borders the northwest side of Petitioners' property.

5. Respondent Mary Fanok purchased her parcel of real estate in 2006.

6. Petitioners allege that the source of the dispute was Daniel Harbin's removal of unspecified items of personal property from Petitioners' property without their consent.

7. According to the complaint, a junkyard had been in existence for some time on the third parcel of land. *See supra*, note 4. Petitioners alleged that Respondents relocated various items of junk from the existing junkyard on parcel three to the Fanok property in an area that was in direct sight of Petitioners' residence.

8. Those items included a bucket seat, a dehumidifier, a television set, a computer monitor, portable toilets, trailer frames, horse trailers, corrugated pipe, tires, building materials, and a large black hose that was coiled around the fence.

9. Respondents indicate that Mrs. Bansbach had been keeping a log of events pertaining to their actions as well as photographing each addition to the junkyard.

10. The record indicates that Mrs. Bansbach and one of her daughters were blocked from returning to their home after visiting a neighbor's property on ATV's for approximately twenty-three minutes before another neighbor intervened and Mr. Harbin moved his vehicle.

11. Petitioners relate that Respondents placed a sign on their property that stated "Lazy Man Salvage. Call 1–800–KISSMY____. ww.LazyMan.com." Another incident that apparently fueled Petitioners' decision to seek judicial relief was the dumping of a load of pig manure on the Fanok property within olfactory range of the Bansbach residence. This episode followed Respondents' erection of the sign announcing a prospective pig farm.

cuit Court of Marion County through which they sought injunctive relief and monetary damages. By order entered on May 21, 2010, Petitioners obtained a temporary injunction. Under the terms of the court's order, Respondents were prohibited from erecting any additional signs, from harassing Petitioners in any way, and from storing any items other than husbandry implements on the Fanok property directly across the road from Petitioners' residence.

Following a hearing on these matters, the trial court concluded that: the materials stored on the Fanok property did not create a private nuisance; Respondents' posting of signs and shouting profanities at Petitioners did not amount to "fighting words" for First Amendment purposes; and Respondents' behavior was not so outrageous that it required injunctive relief. In accord with this ruling, the trial court dissolved the temporary injunction and denied Petitioners' motion for permanent injunctive relief. Petitioners seek review of the trial court's order by means of interlocutory appeal.

## II. Standard of Review

■ In *State ex rel. McGraw v. Telecheck Services*, 213 W.Va. 438, 582 S.E.2d 885 (2003), this Court discussed at length the constitutional authority for this Court's review of interlocutory orders that involve preliminary injunctions. *See id.* at 442–47, 582 S.E.2d at 889–94; W.Va. Const. art. VIII, § 3. While we previously set forth a three-pronged standard in *State v. Imperial Marketing*, 196 W.Va. 346, 472 S.E.2d 792 (1996),[12] for the review of cases in which a trial court has *granted* a temporary or preliminary injunction, we augment that standard to include cases such as this one in which the trial court has *denied* a party's

request for injunctive relief. Accordingly, we hold that in reviewing objections to the findings of fact and conclusions of law supporting the granting or the denial of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting or denying the temporary injunction and the ultimate disposition under an abuse of discretion standard, we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo.

With this standard in mind, we proceed to consider whether the trial court committed error by dissolving the temporary injunction and, further, by denying Petitioners the injunctive relief which they sought on the record submitted in this case.

## III. Discussion

■ While we have long recognized the fact-driven nature of nuisance law, our seminal decision in the area of private nuisance law is *Hendricks v. Stalnaker*, 181 W.Va. 31, 380 S.E.2d 198 (1989). *See Harless v. Workman*, 145 W.Va. 266, 273–74, 114 S.E.2d 548, 552 (1960) ("It has been said that the term 'nuisance' is incapable of an exact and exhaustive definition which will fit all cases, because the controlling facts are seldom alike, and each case stands on its own footing."). In *Hendricks*, we were asked to decide whether the digging of a water well which would in turn prevent an adjacent landowner from developing a septic system due to health department regulations constituted a private nuisance. Finding a need to clarify what constituted a private nuisance,[13] we turned to the treatise definition which categorizes the legal wrong as "includ[ing] conduct that is intentional and unreasonable,

---

12. We held that

In reviewing the exceptions to the findings of fact and conclusions of law supporting the granting of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting the temporary injunction and the ultimate disposition under an abuse of discretion standard, *West v. National Mines Corp.*, 168 W.Va. 578, 590, 285 S.E.2d 670, 678 (1981), we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo. Syl-

labus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

*Imperial Mktg.*, 196 W.Va. at 348, 472 S.E.2d at 794, syl. pt. 1.

13. Prior to our decision in *Hendricks*, a private nuisance was defined in contrast to a public nuisance—that which affects the general public—and identified in terms of causing "injur[y] [to] one person or a limited number of persons only." *Hark v. Mountain Fork Lumber Co.*, 127 W.Va. 586, 595–96, 34 S.E.2d 348, 354 (1945).

negligent or reckless, or that results in an abnormally dangerous conditions or activities in an inappropriate place." 181 W.Va. at 33–34, 380 S.E.2d at 200–01 (citing, *inter alia,* W. Prosser, *Handbook of the Law of Torts* § 87 at 580, § 89 at 593 (4th ed. 1971)). Focusing on the pivotal consideration of whether the subject conduct is unreasonable, we explained in *Hendricks* that "any determination of liability for a private nuisance must include an examination of the private use and enjoyment of the land seeking protection and the nature of the interference." 181 W.Va. at 34, 380 S.E.2d at 201 (citing Restatement (Second) of Torts § 822 (1979)). Borrowing from these established precepts, we held in syllabus point one of *Hendricks* that "[a] private nuisance is a substantial and unreasonable interference with the private use and enjoyment of another's land." 181 W.Va. at 32, 380 S.E.2d at 199.

▮ As in this case, the decision in *Hendricks* turned on whether the conduct at issue qualified as both intentional and unreasonable.[14] 181 W.Va. at 35, 380 S.E.2d at 201–02. To qualify as intentional under nuisance law, conduct must be of the type which the "actor knows or should know that the conduct is causing a substantial and unreasonable interference." *Id.* at 35, 380 S.E.2d at 202 (citing Restatement (Second) of Torts § 825 (1979)). Deciding whether the subject conduct is unreasonable—arguably the more difficult of the two elements—typically requires that the respective landowner's interests be subjected to a balancing test. *See Hendricks,* 181 W.Va. at 34 n. 4, 380 S.E.2d at 201 n. 4 (discussing historical use of balancing tests in nuisance actions). While the fact-intensive nature of these cases prevents us from developing a uniformly applicable balancing test for evaluating alleged instances of nuisance, one such test is provided in syllabus point two of *Hendricks:* "An interference with the private use and enjoyment of another's land is unreasonable when the gravity of the harm outweighs the social value of the activity alleged to cause the harm." 181 W.Va. at 32, 380 S.E.2d at 199. Employing this particular balancing test in *Hendricks,* we concluded that the scale tipped just slightly in favor of the water well.[15] As a result, we ruled that the landowners who sought to install a septic system had not demonstrated that the water well was an unreasonable use of the appellee's land.

In the case before us, the trial court began its analysis by looking at the nature of the location and surrounding area. *See Parkersburg Builders Material Co. v. Barrack,* 118 W.Va. 608, 613, 191 S.E. 368, 371 (1937) ("The surroundings must be considered. Unsightly things are not to be banned solely on that account."). With regard to the land at issue, the trial court found that "the property is located six to eight miles outside of the city of Mannington and the surrounding properties are primarily farm land." Emphasizing the rural nature of the property at hand, the trial court observed: "What is a nuisance in one locality may not be a nuisance in another. Rural residents must expect to bear with farm and livestock conditions normally found in the area where they reside."

The trial court then turned its focus to the nature of the alleged interference with Petitioners' use and enjoyment of their property. At the core of Petitioners' nuisance complaint is the allegation that Respondents transformed a formerly bucolic area into an eyesore. Referencing our decision in *Barrack,* the trial court observed "Traditionally 'courts of equity have hesitated to exercise authority

14. Because Respondents' conduct was intentional, Petitioners argue that the trial court necessarily committed error in failing to award injunctive relief. What Petitioners overlook is that the subject conduct must be *both* intentional and unreasonable. *See Hendricks,* 181 W.Va. at 34 n. 5, 380 S.E.2d at 201 n. 5 (citing Restatement definition as providing that "[o]ne is subject to liability for a private nuisance *if, but only if,* his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, *and* the invasion is … (a) *intentional and unreasonable* ") (emphasis supplied).

15. While both landowners had demonstrated a need for their respective water system, the well required non-interference within 100 feet of its location whereas the septic system was determined to place a more invasive burden on adjacent property based on its drainage potential. *See Hendricks,* 181 W.Va. at 35, 380 S.E.2d at 202.

in the abatement of nuisances where the subject matter is objected to by the complainants merely because it is offensive to the sight.' " *Id.* at 610, 191 S.E. at 369.

■ The issue of whether unsightliness can require abatement under principles of nuisance law was recently revisited by this Court. In *Burch v. Nedpower Mount Storm, LLC,* 220 W.Va. 443, 647 S.E.2d 879 (2007), we were asked to decide, *inter alia,* whether principles of nuisance law could be used to halt the development of a prospective wind power facility. While we found that the surrounding home owners had the right to pursue recovery under private nuisance law,[16] we recognized clear limits on the extent of the protection available: "While unsightliness alone rarely justifies interference by a circuit court applying equitable principles, an unsightly activity may be abated *when it occurs in a residential area and is accompanied by other nuisances.*" *Id.* at 447, 647 S.E.2d at 883, syl. pt. 11 (emphasis supplied).

■ Although our holding in *Burch* was premised upon the existence of additional nuisance grounds besides that of unsightliness [17] and explicitly limited to residential areas, Petitioners argue that it should be applied to the instant case. Notwithstanding Petitioners' contention that a residential area includes any locale with multiple inhabitants, we agree with the trial court's finding that the land at issue is rural. It has long been recognized, and remains the law today, that unsightliness alone is an insufficient basis upon which to seek abatement under nuisance law. *See Barrack,* 118 W.Va. at 613, 191 S.E. at 371. Simply put, Petitioners do not fall within the limited scenario this Court was addressing in syllabus point eleven of *Burch.*

■ Critical to understanding the reach of nuisance law is recognition of the fact that "[r]ecovery for a private nuisance is limited to plaintiffs who have suffered a significant harm to their property rights or privileges caused by the interference." *Hendricks,* 181 W.Va. at 34, 380 S.E.2d at 201 (citing Restatement (Second) of Torts §§ 821E, 821F (1979)); *see also Martin v. Williams,* 141 W.Va. 595, 611, 93 S.E.2d 835, 844 (1956) (describing nuisance as involving material reduction in homeowner's enjoyment of property and material interference with physical comfort of persons in their homes). Illustrative of this need to demonstrate significant harm is *Karpiak v. Russo,* 450 Pa.Super. 471, 676 A.2d 270 (1996), a case in which homeowners sought to enjoin a landscaping business on grounds that the operation of noisy machinery, foul odors, and escaping dust all constituted a private nuisance. In affirming the trial court's dismissal of the action, the appellate court explained "that while appellees' actions may have been annoying and a cause of inconvenience, as a matter of law, appellants failed to establish that the invasion was seriously annoying or intolerable." 676 A.2d at 273. As the Iowa Supreme Court aptly observed in *Mohr v. Midas Realty Corp.,* 431 N.W.2d 380 (Iowa. 1988), "[n]ot every interference with a person's use and enjoyment of land is actionable." *Id.* at 381 (citing Restatement (Second) of Torts § 822 cmt. clause (a)).[18] In *Mohr,* the court ruled that the construction of a building which blocked the view that passing motorists previously had of plaintiff's business was not actionable as nuisance. 431 N.W.2d at 383.

■ Upon our review of this matter, we find no error with the trial court's ruling that

**16.** The trial court had dismissed the case by entering judgment on the pleadings.

**17.** In *Burch,* the plaintiffs also asserted nuisance on the grounds of noise and diminution of property values.

**18.** The comment on clause (a) provides, in pertinent part:

Not every intentional and significant invasion of a person's interest in the use and enjoyment of land is actionable. . . . Life in organized society . . . involves an unavoidable clash of individual interests. Practically all human activities . . . interfere to some extent with others or involve some risk of interference, and these interferences range from mere trifling annoyances to serious harms . . . Liability for damages is imposed in those cases in which the harm or risk to one is greater than he ought to be required to bear under the circumstances, at least without compensation.

Restatement (Second) Torts § 822 cmt. clause (a) (1979).

the Respondents' "storing of farm equipment, building materials, and, perhaps, junk on the Fanok property does not create a nuisance which must be abated by this Court." Like the trial court, we simply cannot conclude that Respondents were using their property at the time of the trial court's January 28, 2011, ruling in a manner that warranted abatement directives under long-standing principles of nuisance law. Simply put, the record in this case does not support a finding of private nuisance. *See* Syl. Pt. 1, *Hendricks,* 181 W.Va. at 32, 380 S.E.2d at 199. We note additionally that the non-agrarian items, as well as the allegedly offensive signs, were long ago removed from the Fanok property.[19]

With regard to the issue of Respondents' previous sign-posting[20] and general campaign of verbal harassment towards Petitioners, we find similarities with our decision in *Booker v. Foose,* 216 W.Va. 727, 613 S.E.2d 94 (2005). In that case, we were asked to determine whether the following litany of conduct constituted private nuisance: making false reports of abuse and neglect against appellants; photographing appellants and their children; video recording appellants' activities; posting signs in appellee's window stating that charges had been filed against appellants for various criminal offenses; photographing and videotaping appellants' guests and visitors; trespassing to peer into appellants' windows; and filing numerous false reports of criminal conduct. *Id.* at 728–29, 613 S.E.2d at 95–96. Emphasizing that " '[t]he crux of a nuisance case is unreasonable land use,' " we concluded that the appellee in *Booker,* although subjecting appellants to inconvenience and outrage, had not "used her property in such a way that it ha[d] substantially impaired their right to use and enjoy their property." 216 W.Va. at 730–31, 613 S.E.2d at 97–98 (quoting *Frank v. Envir. Sanitation Mgt., Inc.,* 687 S.W.2d 876, 880 (Mo.1985)).

We do not doubt that Petitioners found the actions of Respondent with regard to name calling, sign posting, and other outward gestures of disapproval as both unwelcome and annoying. The flip side of the coin, however, is that Respondents similarly took offense at being photographed by Mrs. Bansbach and by her logging of their daily activities. The bottom line, however, is that this type of conduct, as discussed in *Booker,* is simply not what nuisance laws are aimed at remedying.[21] *See* 216 W.Va. at 730–31, 613 S.E.2d at 98.

Based on the foregoing, the decision of the Circuit Court of Marion County is affirmed.

Affirmed.

---

**19.** Mr. Harbin testified at the hearing on July 10, 2010, that he had removed all the items from the Fanok "junkyard" that were neither farm machinery nor building materials. Petitioners' counsel confirmed this statement during oral argument. According to Mr. Harbin's testimony at the same hearing, the signs about which Petitioners complained were removed on April 28, 2010.

**20.** *See supra,* note 19.

**21.** Petitioners argue that the trial court wrongly looked to *Cohen v. California,* 403 U.S. 15, 91

S.Ct. 1780, 29 L.Ed.2d 284 (1971), when addressing the allegations involving speech. While *Cohen* may have limited application given the public nature of the speech at issue in that decision, the trial court did not commit error in ruling that the speech at issue in this case was not actionable under nuisance law. We similarly find no error with the trial court's rulings that the profanity at issue did not create an immediate breach of the peace and that it "was not so outrageous that a reasonable person could not be expected to endure it."