IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**STEVE BLEVINS and**
**BRUCE LARIVIERE,**
**Plaintiffs Below, Petitioners**

**FILED**
**February 28, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-152**        (Cir. Ct. Hardy Cnty. Case No. CC-16-2021-C-34)

**BUCKEYE ADVENTURES, LLC,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners Steve Blevins and Bruce Lariviere appeal two orders from the Circuit Court of Hardy County. First, they challenge a pre-trial hearing order dated August 29, 2023, which precluded them from introducing the tax returns of Respondent Buckeye Adventures, LLC ("Buckeye"), at trial. Second, they assign error to the circuit court's March 7, 2024, bench trial order which denied their complaint and petition. Buckeye filed a response.[1] Petitioners did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In this case, the facts are not in dispute. The parties are each property owners within the Lost River Subdivision ("Lost River"). Petitioner Blevins purchased his Lost River parcel on June 12, 2014, through his company, Turkeys Roost, LLC ("Turkeys Roost").[2] Petitioner Lariviere has owned his Lost River parcel since January 22, 1999. Buckeye is owned by Matthew Mitchell and Jonathan Pearson. Through Buckeye, they purchased two adjacent Lost River parcels on May 2, 2017, which are situated across the road from Petitioner Blevins' property. The Lost River deeds all contain language which incorporates Lost River's Declaration of Restrictions ("Declaration") and notes that the Declaration's restrictive covenants run with the land. Central to this appeal is Covenant Six, which states that Lost River's lots "shall be used for residential purposes only[.]"

---

[1] On appeal, petitioners are represented by Grant M. Sherman, Esq. Buckeye is represented by Jeremy B. Cooper, Esq.

[2] There are various spellings of this entity in the record. For consistency, we use the name as it appears in the legal documents within the appendix record.

1

Following the purchase, Buckeye committed considerable financial resources into rehabilitating the property and renovating an existing dilapidated cabin. Upon completion, Buckeye began listing the property online with short-term rental websites. Around this same time, an adjacent Lost River parcel owner, Mr. Engeldrum, was also actively renting his Lost River dwelling as a short-term rental on similar websites and did so for about two years before selling the property. At no time did any Lost River resident complain to Mr. Engeldrum that he was violating the Declaration, nor was he sent correspondence directing him to stop using his property as a short-term rental.

Buckeye's use of its property as a short-term rental is not in dispute, and the property was used as a short-term rental without incident for approximately two and one-half years. Mr. Mitchell and Mr. Pearson also periodically stayed at the property or permitted their friends to use it free of charge. Petitioner Blevins agreed that prior to this case, he had a cordial relationship with Mr. Mitchell and Mr. Pearson.

The parties agree that the issues precipitating this case arose as follows. In June of 2020, Petitioner Blevins and Mr. Pearson had a discussion regarding Petitioner Blevins' complaints of excessive late-night noise from a specific group of prior renters at the Buckeye property. In response, Mr. Pearson assured Petitioner Blevins that a 10:00 p.m. noise and outdoor activity restriction would be placed upon future renters. Also during this conversation, Mr. Pearson asked Petitioner Blevins if he would temporarily replace the Confederate flag flying on his property with an American flag, explaining that his friends were coming to use the property and that they had a black son. It is undisputed that, after Mr. Pearson made this request, Petitioner Blevins began flying several additional Confederate flags on his property

According to Petitioner Blevins, on June 13, 2020, and August 25, 2020, he sent letters on behalf of Turkeys Roost to Buckeye, complaining that Buckeye's use of the property as a short-term rental violated Covenant Six's residential use restriction. The letters also requested that Buckeye cease and desist all rental activity on the property. Neither letter was received by Buckeye, Mr. Mitchell, or Mr. Pearson.

On October 14, 2021, petitioners filed a complaint and petition seeking declaratory and injunctive relief against Buckeye. The pleadings alleged two causes of action. Count I alleged that Buckeye's use of its property as a short-term rental violated Covenant Six of the Declaration. Count II made a private nuisance claim. For this claim, petitioners alleged that Buckeye's use of its property, as well as the Confederate flag incident created an unreasonable and substantial interference with petitioners' use of their own property. At trial, petitioners additionally contended that Buckeye's use of its property as a short-term rental unreasonably created excessive noise, damage to Lost River's main road, excessive amounts of trash, and increased vehicle traffic.

At a pre-trial hearing on August 8, 2023, the circuit court granted Buckeye's motion to exclude the introduction of its tax returns at trial. The circuit court determined that in light of the issues to be tried, the tax returns were not relevant evidence. This ruling was memorialized in a pre-trial hearing order dated August 29, 2023.

The matter proceeded to a bench trial on December 15, 2023, and at the close of evidence, the circuit court granted Buckeye's motion for judgment as a matter of law on petitioners' private nuisance claim. The remaining issues were taken under advisement. On March 7, 2024, the circuit court entered the bench trial order presently on appeal.

The order began by addressing its ruling with respect to the private nuisance claim. On this issue, the circuit court found that when considered in a light most favorable to petitioners, the evidence failed to establish a prima facie cause of action. Namely, it was determined that there was no evidence of continuous noise disturbances caused by individuals staying at Buckeye's property; insufficient evidence to establish an unreasonable increase in vehicle traffic or that Buckeye-related traffic was responsible for the wear and tear of Lost River's road; and insufficient evidence to show that Buckeye's property created a substantial or unreasonable interference with petitioners' private use and enjoyment of their respective property. Instead, the circuit court found that petitioners' reliance upon isolated incidents between the parties, such as being asked to temporarily remove a Confederate flag, could not support their nuisance claim.

Next, the circuit court turned to the restrictive covenant claim. Pointing to Syllabus Point 3 of *Wallace v. St. Clair*, 147 W. Va. 377, 127 S.E.2d 742 (1962),[3] the circuit court

---

[3] Syllabus Point 3 provides:

Where the owner of land divides it into lots in pursuance of a general plan for the development of an exclusively residential area and conveys the several lots to different grantees by deeds containing identical or substantially similar covenants restricting the use of the lots to residential purposes, such restriction must be construed, in the light of the surrounding circumstances and the obvious purpose sought to be achieved, so as to ascertain the true intent thereof as expressed in the language employed. Such restriction is valid, not violative of public good, inimical to the public policy or subversive of public interests. The resulting right of the owner of each lot to enforce the restriction against the owner of every other lot is a substantial and valuable right, and the owner of any lot should not be denied the right to enforce such restriction by estoppel, waiver or abandonment unless upon a clear showing and for cogent reasons.

*Wallace* at 378, 127 S.E.2d at 745, syl. pt. 3.

determined that Covenant Six "must be construed, in the light of the surrounding circumstances and the obvious purpose sought to be achieved, so as to ascertain the true intent thereof as expressed in the language employed." *Id.* Particularly, the court determined that resolution of this issue centered on the meaning of the term *residential purposes* as contained within Covenant Six.

Among its several findings on this issue, the circuit court found that Lost River did not have a home owners' or property owners' association, nor was there any noise ordinance in effect. It was also observed that the Declaration did not contain any restrictive covenant expressly prohibiting Lost River's property owners from renting their property for residential purposes.

It was determined that according to Petitioner Lariviere's testimony, he was the only party who was a full-time resident of Lost River; he cannot see Buckeye's property from his home or the subdivision's main road; throughout the period Buckeye's property has been operated as a rental, he only interacted with renters twice; the majority of parcel owners use their properties for recreational purposes; and that his family visits and are overnight guests at his home. Petitioner Lariviere also stated that while there were Declaration violations by other residents, he did not wish to enforce them.

In summarizing Petitioner Blevins' testimony, the bench trial order noted that he only stayed at the property approximately two nights per month and that his family and friends also occasionally stayed with him at the property; the property was registered with Turkeys Roost for liability purposes; he had no knowledge of when Buckeye's property was being rented; and he acknowledged that Mr. Mitchell and Mr. Pearson had previously helped repair the main road.

After considering these facts, as well as the Declaration as a whole, the circuit court found as follows:

> In reviewing the covenants in this matter, in light of the surrounding circumstances and purposes sought to be achieved by the developer, it is clear to this [c]ourt that the purpose of the covenants is to protect the appearance and recreational nature of the community, as the covenants mainly address the lot size, house and building size, appearance and location on the lot, utilities and utility easements, time frames for construction, use of temporary buildings, road maintenance, and, use of temporary camper trailers. To maintain the integrity of the community, it is clear that the developer intended for there to be no construction of some industrial or commercial structure.

It then interpreted Covenant Six as follows:

4

Based upon the common scheme or plan of the developer, it is clear to this [c]ourt that the purpose of Covenant 6 is to prevent the properties from being overwhelmed by industrial and commercial enterprises and operations that would destroy the tranquility and very nature of the community, such as a garage, manufacturing plant, barber/beauty shop, grocery store, and the like.

Thereafter, the circuit court concluded that each party was using their respective property for both residential and recreational purposes. Namely, the circuit court found that Buckeye was using its property for the same residential purpose as petitioners and their invitees, in that Buckeye's guests similarly use the property to, among other things, cook, eat, shower, sleep, wash laundry, and enjoy nature. Thus, there was no distinction between a short-term renter's residential use of Buckeye's property and either petitioner's residential use of their homes. The bench trial order concluded by finding that petitioners had failed to prove a violation of the Declaration or establish damages and dismissed the claim. This appeal followed.

On appeal, we are presented with three issues which require the application of separate standards of review. First, petitioners assign error to the circuit court's pre-trial ruling regarding the inadmissibility of Buckeye's tax return at trial. When asked to review a court's evidentiary rulings on appeal, we apply the same standard of review as the Supreme Court of Appeals of West Virginia:

The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, . . . [a]bsent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, *McDougal v. McCammon,* 193 W. Va. 229, 455 S.E.2d 788 (1995).

On this issue, petitioners argue that pursuant to Rules 401, 402, and 403 of the West Virginia Rules of Evidence, the tax returns were admissible because the returns were relevant and probative evidence to show that Buckeye's property was being used for commercial purposes in violation of Covenant Six. Upon review, we find no error by the circuit court. While petitioners argue that the tax returns were necessary to establish that Buckeye was renting its property for profit, it is well established by the record that Buckeye's use of its property as an income generating rental property was never in dispute. Because this fact was never contested, the circuit court did not abuse its discretion by concluding that the tax returns were not relevant evidence for trial.

Next, petitioners assert that the circuit court erred when it granted Buckeye judgment as a matter of law on the private nuisance claim. For this issue, we apply the following standard of review:

5

The appellate standard of review for the granting of a motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed.

Syl. Pt. 5, *Smith v. First Cmty. Bancshares, Inc.*, 212 W. Va. 809, 575 S.E.2d 419 (2002) (quotations and citation omitted).

Here, petitioners argue that the circuit court erred because it failed to properly consider the evidence when it determined that a prima facie private nuisance claim had not been established. Petitioners maintain that the court did not appropriately consider such things as the damage caused to Lost River's main road by Buckeye's commercial use of the property, the Confederate flag incident, and excessive late-night noise from the Buckeye property. According to petitioners, because a reasonable person could have weighed this evidence differently, this ruling must be reversed. We are unpersuaded by this argument.

It has been held that "[a] private nuisance is a substantial and unreasonable interference with the private use and enjoyment of another's land." Syl. Pt. 1, *Hendricks v. Stalnaker*, 181 W. Va. 31, 380 S.E.2d 198 (1989). A private nuisance claim also requires that the interfering conduct be both intentional and unreasonable. *Bansbach v. Harbin*, 229 W. Va. 287, 291, 728 S.E.2d 533, 537 (2012) (citation omitted). "To qualify as intentional under nuisance law, conduct must be of the type which the actor knows or should know that the conduct is causing a substantial and unreasonable interference." *Id.* (citation and quotations omitted). Further, "[a]n interference with the private use and enjoyment of another's land is unreasonable when the gravity of the harm outweighs the social value of the activity alleged to cause the harm." *Hendricks* at 32, 380 S.E.2d at 199, syl. pt. 2.

Below, the circuit court determined that the record did not support petitioners' nuisance claim. We agree. As explained in *Bansbach*:

Critical to understanding the reach of nuisance law is recognition of the fact that "[r]ecovery for a private nuisance is limited to plaintiffs who have suffered a significant harm to their property rights or privileges caused by the interference." *Hendricks*, 181 W. Va. at 34, 380 S.E.2d at 201 (citing Restatement (Second) of Torts §§ 821E, 821F (1979)); *see also Martin v. Williams*, 141 W. Va. 595, 611, 93 S.E.2d 835, 844 (1956) (describing nuisance as involving material reduction in homeowner's enjoyment of property and material interference with physical comfort of persons in their

homes). Illustrative of this need to demonstrate significant harm is *Karpiak v. Russo*, 450 Pa. Super. 471, 676 A.2d 270 (1996), a case in which homeowners sought to enjoin a landscaping business on grounds that the operation of noisy machinery, foul odors, and escaping dust all constituted a private nuisance. In affirming the trial court's dismissal of the action, the appellate court explained "that while appellees' actions may have been annoying and a cause of inconvenience, as a matter of law, appellants failed to establish that the invasion was seriously annoying or intolerable." 676 A.2d at 273. As the Iowa Supreme Court aptly observed in *Mohr v. Midas Realty Corp.*, 431 N.W.2d 380 (Iowa 1988), "[n]ot every interference with a person's use and enjoyment of land is actionable." *Id.* at 381 (citing Restatement (Second) of Torts § 822 cmt. clause (a)).

*Bansbach* at 292, 728 S.E.2d at 538.

Here, as evidenced by the record and outlined by the circuit court's bench trial order, petitioners presented limited evidence and focused on isolated incidents in support of their claim. We recognize that petitioners may have been occasionally annoyed or inconvenienced by the Buckeye property's use as a short-term rental; however, as noted above, mere annoyance or inconvenience does not constitute an actual nuisance. Moreover, "[t]he crux of a nuisance case is unreasonable land use." *Booker v. Foose*, 216 W. Va. 727, 730, 613 S.E.2d 94, 97 (2005) (citation and quotations omitted). Petitioners simply failed to establish that the Buckeye property was used in such a way that it has substantially impaired their right to use and enjoy their property. Accordingly, we agree with the circuit court that there was no nuisance to abate.

As their final assignment of error, petitioners argue that the circuit court erred in its determination that Covenant Six had not been violated. For this issue, this Court applies the following standard of review:

In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

In support of this argument, petitioners aver that the circuit court misinterpreted the residential use restriction within Covenant Six by finding that Buckeye's use as a short-term rental was a residential purpose. Instead, petitioners urge this Court to find that

7

Buckeye's use is commercial despite Mr. Mitchell's and Mr. Pearson's personal use of the property for recreational purposes. They also argue that when reading the Declaration as a whole, it must be inferred that the term *residential purposes* was not intended to contemplate short-term rentals and that only long-term rentals in excess of six months can be deemed to be of a residential nature and permitted under the Declaration. We find no merit in this argument.

Notably, petitioners offer no legal precedent to support this assignment of error. Instead, petitioners' argument on this issue merely restates the authority relied upon in the circuit court's bench trial order and offers this Court an alternative application of the law to the facts of the case. At its core, petitioners' argument is that they disagree with the circuit court's view of the evidence and its interpretation of Covenant Six. This is not sufficient to establish error on appeal. Essentially, petitioners' argument asks this Court to look at the record and reach a more favorable conclusion. However, it is well established that on appeal, "[a]n appellate court does not reweigh the evidence[.]" *State v. Thompson*, 220 W. Va. 246, 254, 647 S.E.2d 526, 534 (2007) (per curiam); *Coles v. Century Aluminum of W. Va.*, No. 23-ICA-81, 2023 WL 7202966, at *2 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision) (noting that an appellate court will not reweigh the evidence presented below on appeal).

Below, the circuit court relied upon *Wallace* to ascertain the intent behind the Declaration limiting the use of Lost River's parcels to residential purposes. *See Wallace*, 147 W. Va. at 390, 127 S.E.2d at 751 (stating that the intention of a restrictive covenant is "gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish."). In doing so, the record shows that the circuit court considered the entire Declaration and the evidence adduced at trial to reach its determination that nothing within the Declaration prohibited the renting of residential property; it also concluded that Buckeye's Lost River property was being used in the same residential manner as petitioners were using their respective property. Therefore, we cannot conclude that the circuit court's ultimate disposition is an abuse of discretion or that its factual findings are clearly erroneous.

Accordingly, we affirm the circuit court's August 29, 2023, and March 7, 2024, orders.

Affirmed.

**ISSUED:** February 28, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

8