# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FRANK D. UNGER,**
**Plaintiff Below, Petitioner**

**v.) No. 24-ICA-501**  (Cir. Ct. Roane Cnty. Case No. CC-44-2024-P-67)

**ROANE COUNTY COMMISSION,**
**Defendant Below, Respondent**

**FILED**
**August 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Frank D. Unger appeals the November 19, 2024, order from the Circuit Court of Roane County, which dismissed his action for injunctive relief against Respondent Roane County Commission ("Commission"). The Commission filed a summary response in support of the circuit court's order.[1] Mr. Unger filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case is framed as purely a question of law. Therefore, the underlying facts will be brief. At issue in this case is an annex building, which is the last remaining structure linked to the original Roane County Courthouse. Since 2018, the Commission has discussed taking steps to demolish the structure due to its dilapidation. In 2024, the Commission submitted information to the West Virginia Department of Arts, Culture, and History ("Department"), regarding the planned demolition of the annex using county funds.

The Department replied by letter dated October 17, 2024. In that letter, the Department stated that "[i]t is our understanding that no federal agency funding, permitting[,] or licensing is needed for the project and that [the Commission] is conducting its due diligence in seeking our comments." It was noted that if any state or federal money or permitting is pursued as part of the project, then a formal review would be required under West Virginia Code § 29-1-8 (2009) and Section 106 of the National Historic

---

[1] Mr. Unger is self-represented. The Commission is represented by Eric J. Holmes, Esq., Law Offices of Harris & Holmes, PLLC.

Preservation Act of 1966 (collectively "Section 106").[2] The Department noted that it would only become involved in the project if such review were implemented. The letter also indicated that the annex was eligible to apply for inclusion in the National Register of Historic Places, and at the Commission's election, it could apply for several grants which could help with preserving the structure. The Department informed the Commission that in its opinion, demolishing the annex would adversely affect "any future historic district established in downtown Spencer."

The project was initially placed out for competitive bid in 2019 ("2019 Bid"); however, the Commission voted to reject all bids (as unopened) after asbestos issues were discovered within the building. In 2024, the Commission initiated another competitive bid process for demolition of the annex ("2024 Bid") from which seven bids were received. At an open Commission meeting held on October 24, 2024, the bids were opened, and the low bidder was determined to be Reclaim Property, LLC, in the amount of $54,980. Mr. Unger did not attend this meeting.

Mr. Unger filed a complaint for injunctive relief on October 22, 2024, which included an ex parte request for a preliminary injunction pending a hearing on the complaint. His contentions were that the Commission failed to initiate a Section 106 review of the annex before soliciting the 2024 Bid,[3] and that the Commission will not grant

---

[2] The relevant language of West Virginia Code § 29-1-8 requires the Director of Historic Preservation within the Division of Culture and History to, among other things, "review all undertakings permitted, funded, licensed or otherwise ***assisted, in whole or in part, by the state*** for the purposes of furthering the duties of the section . . . to carry out the duties and responsibilities enumerated in the National Historic Preservation Act of 1966, as amended." (emphasis added). As detailed by 36 C.F.R § 800.1(a), Section 106 requires:

> Federal agencies to take into account the effects of their undertakings on historic properties and afford the Council a reasonable opportunity to comment on such undertakings. . . . . The section 106 process seeks to accommodate historic preservation concerns with the needs of Federal undertakings through consultation among the agency official and other parties with an interest in the effects of the undertaking on historic properties, commencing at the early stages of project planning. The goal of consultation is to identify historic properties potentially affected by the undertaking, assess its effects and seek ways to avoid, minimize or mitigate any adverse effects on historic properties.

[3] Mr. Unger's claims below and arguments on appeal intermingle events and the Commission's actions regarding the 2019 Bid. However, all arguments and challenges to the 2019 Bid are moot. As evidenced by the record, the Commission postponed the annex demolition project and rejected all of the 2019 bids. Later, the 2024 Bid was conducted,

anyone, including bidders, access to the interior of the annex to assess its structural integrity. As relief, Mr. Unger sought: (1) a cease and desist order to issue regarding the demolition; (2) for "[he] and allied professionals" to be granted access to the interior of the structure to perform an analysis of the claimed dilapidation and report to the court; (3) access to the list of bidders and results from the 2019 and 2024 Bids; (4) leave to submit a Freedom of Information Act ("FOIA") request to the state's historic preservation office regarding the status of the Section 106 review; and (5) authority to nominate the property to the West Virginia Endangered Properties List, an advocacy group administered by the Preservation Alliance of West Virginia.

On October 23, 2024, the circuit court entered an order denying Mr. Unger's ex parte request for a preliminary injunction, and set the matter for a status hearing, which was held on October 31, 2024. On October 30, 2024, Mr. Unger filed four separate documents titled "General Affidavit." Through these affidavits, Mr. Unger details his qualifications as a "Historic Preservation Consultant" and profession as a contractor who specializes in historic restorations; states that on October 7, 2024, the Commission denied his request to enter the annex for the purpose of performing a professional evaluation of the structure's integrity; that he purchased a half-page in the October 17, 2024, issue of the county newspaper to apprise county residents of the purpose of historic preservation, as well as "expose" the Commission's lack of transparency regarding its plans to demolish the annex; and that he observed the removal of a "white box" from the annex in the "summer of 2024." Ultimately, a formal hearing on Mr. Unger's request for injunctive relief was scheduled by the circuit court for November 19, 2024.

The Commission filed a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure on November 7, 2024. The motion included the supporting affidavit of the Commission's President, Randy Whited. Through its motion, the Commission contended that dismissal was proper because Mr. Unger's claim was predicated upon application of Section 106, which did not apply because the Commission was exclusively using the county's general revenue funds to cover the cost of the demolition. The Commission also contended that it was acting within the authority proscribed to it by Section 11, Article 9 of the West Virginia Constitution and West Virginia Code § 7-1-3 (1999).[4]

_____

which resulted in the Commission's selection of the winning bid. Therefore, because the 2019 Bid was dissolved and superseded by the 2024 Bid, only the circumstances surrounding the 2024 project are germane to Mr. Unger's underlying action for injunctive relief.

[4] This statute was amended, effective May 13, 2024; however, the former version was in effect during the time in which the events leading to the underlying action arose.

On November 14, 2024, Mr. Unger filed a response in opposition to the motion to dismiss, claiming that the Commission had not produced a structural assessment of the annex or clarified if one exists; provided the requested information regarding the 2019 and 2024 bids; nor had they disclosed the funding source for the 2024 project, including any related permits or environmental testing. Mr. Unger also opposed the motion to dismiss because the Commission had not consulted with the City of Spencer about the demolition, and the Commission had failed to respond to his FOIA request. Mr. Unger requested that the matter proceed to the November 19, 2024, hearing.

A hearing was held on November 19, 2024, at which time the court heard the parties' arguments and permitted Mr. Unger to submit a nine-page document, plus attachments for the court's review and consideration of the motion to dismiss.[5] That same day, the circuit court entered the order presently on appeal.

In its order, the court found that Mr. Unger's request for injunctive relief was predicated on the Commission's alleged failure to initiate a Section 106 review of its planned undertaking to demolish the annex. To that end, the court found that the Commission pleaded and offered by affidavit, that no federal or state funds were going to be used to pay for the project. Therefore, the court concluded that Section 106 was inapplicable because the Commission's plan to demolish the annex did not meet the

---

[5] This nine-page document contains several paragraphs identified as either "Opening Statements" or "Closing Arguments" which petitioner offers in support of his request for injunctive relief. The accompanying nine attachments consist of a historic photograph of the Roane County Courthouse; a portion of an e-mail exchange between Mr. Unger and a representative from the Department between June and July 2009, regarding the Commission's plans to demolish old cabins at the local 4-H camp; a flowchart of the Section 106 review process; a March 14, 2018, email response to Mr. Unger from a Department representative, stating that the representative had discussed the Section 106 review process and proposed demolition with the Commission, and that the Commission was told that the use of county funds would not require a Section 106 review to be conducted; a copy of the October 17, 2024, letter from the Department to the Commission regarding the Commission's current plan for demolition; an October 7, 2024, e-mail from Conserv Incorporated to an individual other than Mr. Unger, which states that efforts to preserve the annex were not justified because the structure had exceeded its useful/functional life, and that conversion of the area into a greenspace would best serve the community; a November 6, 2024, email from Pinnacle Consultants stating that it would not honor Mr. Unger's FOIA request for a copy of the asbestos inspection it performed of the annex because it was sub-contracted to perform the inspection and paid by an entity other than the Commission or county funds; and an excerpt from the county paper's October 17, 2024, issue regarding the Commission's addition of an outside towing company to the county's wrecker service rotation.

definition of the term "undertaking" as defined by Section 106. *See* 36 C.F.R. 800.16(y) (2003) (defining the term as "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency; those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval."). Similarly, the court found that the project was not a state or state-assisted project and, thus, did not require Section 106 review. This appeal followed.

As an initial matter, we recognize that the parties treat this appeal and the circuit court's order as one arising from a dismissal pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. However, that designation does not accurately reflect the posture of the case at the time of the circuit court's ruling as evidenced by the record. Rather, the record shows that the circuit court did not limit its consideration to the four corners of Mr. Unger's October 22, 2024, complaint, but rather, the court permitted the parties to submit additional evidence that, as argued by the parties before the circuit court, went to the merits of Mr. Unger's request for injunctive relief. More importantly, that evidence helped form the basis for the court's ruling now on appeal. Neither party contends or points to the record to indicate that this evidence was considered by the court over a party's objection. Thus, the circuit court's ruling reflects a disposition of Mr. Unger's complaint on the merits, and as such, the applicable standard of review for a court's ruling on a request for injunctive relief is as follows:

> In reviewing objections to the findings of fact and conclusions of law supporting the granting or the denial of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting or denying the temporary injunction and the ultimate disposition under an abuse of discretion standard, we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo.

Syl. Pt. 1, *Bansbach v. Harbin*, 229 W. Va. 287, 728 S.E.2d 533 (2012); *see also* Syl. Pt. 11, *Stuart v. Lake Washington Realty Corp.*, 141 W. Va. 627, 92 S.E.2d 891 (1956) ("Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse . . . a temporary or a permanent injunction, . . . ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case[.]").

In this appeal, Mr. Unger raises several points to challenge the circuit court's denial of his request for injunctive relief; however, not all of Mr. Unger's arguments are properly before this Court.[6] Accordingly, only Mr. Unger's pertinent arguments will be addressed

---

[6] For example, Mr. Unger makes arguments on behalf of the City of Spencer and the citizens of Roane County. However, he lacks standing to bring such claims. As evidenced by this complaint, Mr. Unger brought this action individually, and not as a City

in this decision. Bearing that in mind, our consideration centers on Mr. Unger's arguments which make the all-encompassing contention that the circuit court erred when it determined that the Commission's demolition plan was not subject to the Section 106 review process. Therefore, we combine and restate his remaining assignments of error as that singular issue for the purposes of this appeal. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues); *Perry v. Ravenscroft*, No. 24-ICA-134, 2024 WL 5002991, at *3 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision) (consolidating and restating petitioner's assignments of error on appeal).

Mr. Unger offers an array of contentions to support his claim that the circuit court erred in finding that a Section 106 review was not required. Notably, he asserts that the Commission initially intended to use state or federal funds but made a "late switch" in the funding source to evade the application of Section 106. Mr. Unger states that he is certain that the Commission has misled the public about the project and its funding, as well as denied the taxpayers a voice and invitation to review the project. He also suggests that the Commission hid an alliance with a "private sector interest," who conspired with the Commission to develop the plans to demolish the annex, construct a greenspace, and rezone portions of the surrounding commercial area. Additionally, Mr. Unger argues that the circuit court's ruling was inappropriate because the Commission had not complied with the circuit court's order, following the October 31, 2024, status hearing, which required the Commission to disclose certain information to Mr. Unger. We reject each of these arguments as meritless.[7]

---

official or expressly on behalf of any other similarly situated individuals. Likewise, no entity or individual sought to intervene on petitioner's behalf below. Mr. Unger asserts that the Commission failed to comply with his FOIA request; however, albeit making a request for leave to submit a FOIA request to the Department, and alluding to an outstanding request in his response to the Commission's motion to dismiss, Mr. Unger's pleading contains no allegations related to the Commission failing to respond to a FOIA request. *See* W. Va. Code §§ 29B-1-1 to -7. Similarly, outside of his complaint, Mr. Unger claims that the Commission violated the West Virginia Open Governmental Proceedings Act. *See* W. Va. Code §§ 6-9A-1 to -12.

[7] Mr. Unger's brief also contains the subtle argument that court's November 19, 2024, ruling denied him due process. However, this argument was not raised as an assignment of error and appropriately argued as required by Rules 10(c)(3) and (5) of our Rules of Appellate Procedure. Thus, any due process challenge has been waived. "'Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are

We begin by observing that it is undisputed that the Commission is vested with the statutory and constitutional authority to dispose of county-owned property. The parties also agree that Section 106 only applies if the Commission's proposed demolition is determined to be a federal "undertaking," which has been defined as a project involving a historic property and the use of state or federal funds. *See* 36 C.F.R §§ 800.1(a) and 800.16(y), W. Va. Code § 29-1-8.

Below, the Department's October 17, 2024, letter stated that the Commission's 2024 project was not subject to Section 106 review because it was not utilizing state or federal funds. Further, the Commission submitted an affidavit from its president stating that the 2024 project was being exclusively funded by county monies. Mr. Unger submitted evidence to support his theories of the case. Ultimately, however, the circuit court found the Commission had established that its project did not require Section 106 review. We decline to disturb the court's determination on this issue.

Simply stated, Mr. Unger has failed to set forth sufficient evidence to convincingly refute the Commission's position that Section 106 did not apply. Rather, Mr. Unger attempts to support the factual allegations in his complaint based upon a scattering of documents, the relevancy of which to the matter at hand is not apparent. Similarly, Mr. Unger's claims are based upon subjective inferences and the unsupported legal conclusion that the Commission has engaged in unscrupulous conduct aimed at demolishing a historical landmark without seeking state and federal review as required by law. Moreover, at the heart of Mr. Unger's arguments on appeal is a steadfast disagreement with the circuit court's interpretation of the record. This is not sufficient to establish an abuse of discretion. Furthermore, to the extent Mr. Unger invites this Court to look at the record and reach a more favorable conclusion, we decline to do so. It is well established that on appeal, "[a]n appellate court does not reweigh the evidence[.]" *State v. Thompson*, 220 W. Va. 246, 254, 647 S.E.2d 526, 534 (2007); *Coles v. Century Aluminum of W. Va.*, No. 23-ICA-81, 2023 WL 7202966, at *2 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision) (noting that an appellate court will not reweigh the evidence presented below on appeal). "[A] trial court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Forshey v. Jackson*, 222 W. Va. 743, 756, 671 S.E.2d 748, 761 (2008) (quotations and citations omitted). Here, the circuit court weighed the parties' conflicting evidence and reached the conclusion that Mr. Unger had not established a right to relief. We decline to disturb this determination.

---

not considered on appeal.'" *Maher v. Camp 4 Condo. Ass'n, Inc.*, 249 W. Va. 433, 439 n.8, 895 S.E.2d 836, 842 n.8 (Ct. App. 2023) (quoting *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996)).

Lastly, we find no merit in Mr. Unger's argument that the circuit court erred because it ruled without the Commission first complying with the court's October 31, 2024, order. This order was not presented by petitioner as part of the appendix record, but more importantly, a transcript of the November 19, 2024, hearing was not provided to establish that Mr. Unger raised this issue before the circuit court to preserve the matter for appeal. Likewise, there is no indication in the record that Mr. Unger took any action prior to the November 19, 2024, hearing to compel the Commission's compliance with the October 31, 2024, order.

While this Court entered an order supplementing the record with several documents from the proceedings below, our supplementation did not include any transcripts or a copy of the October 31, 2024, hearing order. Critically, however, our decision to supplement the record in this case did not relieve Mr. Unger of his burden to preserve alleged errors for appeal. Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, an argument "must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." Further, in *Jenkins v. Taylor*, No. 23-ICA-71, 2023 WL 7202678, at *2 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision), we noted that pursuant to Syllabus Point 5 of *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966):

> An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

*Id.*; *see also* Syl. Pt. 4, *State v. Browning*, 199 W. Va. 417, 485 S.E.2d 1 (1997) ("This Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record."). Because Mr. Unger has not established that this error was preserved below, we decline to address his argument on appeal.

Based on the foregoing, we cannot conclude that the circuit court's ultimate disposition is an abuse of discretion or that its factual findings are clearly erroneous. Therefore, we affirm the circuit court's November 19, 2024, order.

Accordingly, we affirm. The Clerk of this Court is directed to issue the mandate contemporaneously with this memorandum decision.

Affirmed.

**ISSUED:** August 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White